UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARK ERIC LAWLOR,

          Petitioner,

v.                                  Civil No. 2:15cv113

DAVID W. ZOOK, Warden,
Sussex I State Prison,

          Respondent.

## OPINION AND FINAL ORDER

This matter is before the Court on a Petition for Writ of
Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, by counsel
for Mark Eric Lawlor ("Lawlor" or "Petitioner"), a Virginia
state inmate. ECF No. 20. Petitioner was convicted for the
capital murder of Genevieve Orange and was sentenced to death on
July 2, 2011. The Petition alleges numerous violations of
federal constitutional rights arising out of Petitioner's
conviction and sentencing in the Circuit Court of Fairfax
County, Virginia. Respondent, the Warden of Sussex I State
Prison ("Respondent"), filed an answer and moved to dismiss the
Petition, and a reply was filed by Petitioner. ECF Nos. 27-29,
35. Petitioner thereafter filed a related motion seeking to
supplement the record. ECF No. 38.

The Petition and motion to supplement were referred to a
United States Magistrate Judge for report and recommendation

("R&R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Local Civil Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. On August 26, 2016, the Magistrate Judge issued his R&R, recommending that this Court: (1) deny and dismiss the motion to supplement; and (2) grant Respondent's motion to dismiss Lawlor's § 2254 petition in its entirety. R&R 2, ECF No. 50. By copy of the R&R, Petitioner and Respondent were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge.

In light of the number, and complexity, of the procedural and substantive issues raised in the Petition, and addressed in the R&R, this Court granted Petitioner's motion seeking an extension of time to file objections to the R&R. ECF Nos. 51-52. On October 24, 2016, this Court received Petitioner's objections, which challenge the recommendations in the R&R as to sixteen of the eighteen claims raised in the Petition. ECF No. 53. On December 5, 2016, the Court received Respondent's brief in opposition to the objections. ECF No. 54. On December 29, 2016, Petitioner filed a motion seeking leave to amend his § 2254 Petition. ECF No. 55. Such motion was fully briefed by mid-January, 2017. ECF Nos. 56, 57.

Having reviewed the record and examined Petitioner's objections to the R&R, and having made de novo findings with

2

respect to those portions objected to, this Court hereby **ADOPTS and APPROVES** the findings and recommendations set forth in the R&R, with the clarifications set forth below. Petitioner's motion for leave to supplement is **DENIED**, Respondent's motion to dismiss is **GRANTED**, and the § 2254 Petition is **DISMISSED and DENIED**. Additionally, the Court **DENIES** Petitioner's motion for leave to amend.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court adopts and incorporates herein the Magistrate Judge's account of the facts and procedural background of Petitioner's state case and the instant federal habeas case. R&R 2-5.[1] In summary, at the conclusion of the guilt phase of Lawlor's state trial, the jury returned unanimous verdicts of guilt on two capital murder charges (murder in the commission of abduction with intent to defile, and murder in the commission of rape or attempted rape). At the conclusion of the penalty phase, the sentence was fixed as "death" by the same jury after the jury "found unanimously and beyond a reasonable doubt" that, as to both capital convictions, "there is a probability that [Petitioner] would commit criminal acts of violence that would constitute a continuing serious threat to society" (hereinafter "future dangerousness") and that Petitioner's "conduct in

---

[1] Neither party objected to the Magistrate Judge's recitation of the factual and procedural background.

3

committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind, or aggravated battery to the victim." Joint Appendix ("JA") 12940-42. The presiding judge, after conducting a separate sentencing hearing, found "no reason to intercede" and impose a sentence different than that fixed by the jury, and he therefore "affirm[ed] and impose[d]" the sentence of death as to both counts. JA 13134.

Petitioner filed an appeal, and the Supreme Court of Virginia affirmed the convictions and sentence. Lawlor v. Com., 285 Va. 187, 738 S.E.2d 847 (2013). Petitioner thereafter filed a petition for a writ of habeas corpus to the Supreme Court of Virginia ("state habeas petition"), and such petition was dismissed. Lawlor v. Davis, 288 Va. 223, 229, 764 S.E.2d 265, 273 (2014). Petitioner timely filed the instant § 2254 Petition in this Court, and now that the referred proceeding before the Magistrate Judge has been completed, this matter is ripe for review.

## II. STANDARD OF REVIEW

### A. Standard for Reviewing the R&R

"The Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [R&R] . . . to which objection is made.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28

4

U.S.C. § 636(b)(1)); see also R. Gov. § 2254 Cases in U.S. Dist. Courts 8(b). Because "[s]ection 636(b)(1) does not countenance a form of generalized objection," but rather, requires "a party's objection to a magistrate judge's report be specific and particularized," de novo review must only be performed when an objection is advanced with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 621-22 (4th Cir. 2007). When a party fails to advance a specific objection, "a district court . . . must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond, 416 F.3d at 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). After performing the appropriate level of review, the district court may "accept, reject, or modify" the Magistrate Judge's R&R, "in whole or in part," or may "recommit the matter" to the Magistrate Judge. 28 U.S.C. § 636(b)(1).

## B. Standard for Evaluating a § 2254 Motion

Federal habeas relief is available to a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before a federal court may consider a writ of habeas corpus presented by an individual in state custody, the petitioner must first exhaust all available state court

remedies or demonstrate the absence or ineffectiveness of such remedies. Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (citing 28 U.S.C. § 2254(b)); see West v. Carpenter, 790 F.3d 693, 697 (6th Cir. 2015), cert. denied sub nom. West v. Westbrooks, 136 S. Ct. 1456 (2016) (describing exhaustion as necessary to render a state prisoner "eligible" for relief under § 2254). To satisfy the exhaustion requirement, and demonstrate eligibility for federal habeas relief, the petitioner must generally "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" which requires "presenting to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth, 377 F.3d at 448 (internal quotation marks and citations omitted).

Claims for relief that were fully exhausted in state court must also be "cognizable on federal habeas review" before § 2254 relief can be granted. Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008). Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. Maguire, 502 U.S. 62, 67-68 (1991). "Matters of State law not involving federal constitutional issues are [therefore] not appropriate grounds for federal habeas corpus relief," and errors "merely related to

a State procedural question . . . may not be reached in a federal habeas corpus petition unless the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice, or exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) (internal quotation marks and citations omitted). As there is "no federal constitutional right to post-conviction proceedings in state court," a federal habeas petitioner is generally not entitled to relief based on errors occurring during a state habeas proceeding because such claims of error represent "an attack on a proceeding collateral to detention and not to the detention itself." Lawrence, 517 F.3d at 717 (citations omitted).

Even if state court remedies have been exhausted as to habeas claims that are cognizable in federal court, "[a] state prisoner seeking § 2254 habeas corpus relief faces several procedural obstacles." Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). Failure to comply with applicable state procedural requirements can result in a "procedural default" which generally precludes a federal court from adjudicating the merits of a petitioner's claims. Id. (citing Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006)). As explained in detail by the United

States Court of Appeals for the Fourth Circuit ("Fourth Circuit"):

> Under the procedural default doctrine, federal habeas review of federal claims defaulted by prisoners in state court "pursuant to an independent and adequate state procedural rule . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman v. Thompson, 501 U.S. 722, 750 (1991). "The procedural default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (internal citation and quotation marks omitted). In addition to showing "due regard for States' finality and comity interests," Dretke v. Haley, 541 U.S. 386, 393 (2004), the procedural default doctrine's cause and prejudice standard, by allowing federal courts to consider certain procedurally defaulted claims, also serves to ensure "that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 697 (1984)).

Richmond v. Polk, 375 F.3d 309, 322 (4th Cir. 2004) (omission in original).[2]

---

[2] In the context of procedurally defaulted claims alleging trial errors, "prejudice" is defined as errors that "worked to [a petitioner's] actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). In the context of a § 2254 habeas claim asserting a "Brady violation," which occurs when the prosecution fails to disclose material exculpatory evidence, the Fourth Circuit has described the procedural default "prejudice" standard as "coincident with" the "prejudice" that must be proven to establish a Brady violation, Wolfe v. Clarke, 691 F.3d 410, 420 (4th Cir. 2012), namely, that the withheld evidence is reasonably "likely to have changed the verdict," United States v. Bartko, 728 F.3d 327, 338, 340 (4th Cir. 2013) (quotation marks and citations omitted). As an alternative to the "cause and prejudice" standard outlined in Frady, there is also a limited "fundamental miscarriage of justice exception," which in a death penalty case, can be established if a petitioner puts forth "clear and convincing evidence" demonstrating that, "but for the

As to fully exhausted cognizable claims that are not defaulted, a federal court may grant relief on a claim adjudicated on the merits by a state court only if such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."[3] Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Importantly, a § 2254 motion cannot be granted "simply because [the federal district] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; rather, relief is only

---

constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." Richmond, 375 F.3d at 323 (quotation marks and citations omitted).

[3] All references in this opinion to the "Supreme Court" that are not accompanied by further clarifying language refer to the Supreme Court of the United States.

warranted when the erroneous application is determined to be "objectively unreasonable." Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000) (en banc) (quoting Williams, 529 U.S. at 411).

A state court makes an unreasonable determination of fact when its application of the law depends on a finding of fact that is simply not supported by evidence in the state court record. Wiggins v. Smith, 539 U.S. 510, 528 (2003). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"; rather, it is only when "reasonable minds reviewing the record" could not disagree about the error that a federal court performing § 2254(d)(2) review may reject the finding of the state court. Wood v. Allen, 558 U.S. 290, 301 (2010) (quotation marks and citations omitted). Additionally, when performing "§ 2254(d)(2) review" in this Circuit, such review is informed by "§ 2254(e)(1), which provides that 'a determination of a factual issue made by a State court shall be presumed to be correct,' and the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011).[4]

---

[4] As discussed in Elmore, while the Fourth Circuit considers § 2254(e)(1) in its application of § 2254(d)(2), "[t]he Supreme Court has not decided whether § 2254(e)(1)—an 'arguably more deferential standard' than § 2254(d)(2)—'applies in every case' involving § 2254(d)(2) review."

## C. **Strickland** Ineffective Assistance Standard

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Here, Petitioner advances multiple stand-alone ineffective assistance claims where the asserted basis for relief is Lawlor's contention that he was denied his Sixth Amendment right to constitutionally effective representation during his trial. Additionally, as to several constitutional claims that have been deemed defaulted pursuant to an adequate state procedural rule, Petitioner alleges that his trial counsel performed at a constitutionally deficient level in an effort to demonstrate "cause" for failing to raise the now-defaulted claim at an earlier time. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) ("[W]hen attorney error amounts to constitutionally ineffective assistance of

---

Elmore, 661 F.3d at 850 (quoting Wood, 558 U.S. at 300-01). While the Supreme Court granted certiorari in Wood to address the interplay of such statutory provisions, such issue was ultimately not reached in Wood because the disputed factual finding was reasonable under the less deferential standard articulated in § 2254(d)(2). Here, similar to Wood, the result is the same irrespective of which statutory subsection is applied.

counsel, it may provide the cause necessary to excuse a procedural default.").

To succeed on a stand-alone ineffective assistance claim, or to use ineffective assistance as a means to excuse procedural default, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's constitutionally deficient performance caused the petitioner prejudice. Strickland, 466 U.S. at 687-88; see Clagett v. Angelone, 209 F.3d 370, 380 (4th Cir. 2000) ("[I]n order to establish a claim of ineffective assistance that can serve as cause to excuse procedural default, [the § 2254 petitioner] must satisfy the test set forth in Strickland."). "Vague and conclusory allegations contained in a [federal habeas] petition" are insufficient to carry a petitioner's burden under Strickland, and such allegations may therefore "be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (quotation marks and citation omitted).

Satisfying the first prong of Strickland requires a Petitioner to establish that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised

12

reasonable professional judgment, and only in "relatively rare situations" will a § 2254 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. As recently reiterated by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove

13

either of the two prongs of the Strickland test, the court need not evaluate the other prong. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

Having carefully reviewed the applicable standards governing this Court's review, it is important to clarify at the outset that the question before this Court when evaluating Petitioner's Strickland claims is not whether Lawlor has demonstrated both prongs of the Strickland standard, but rather, whether Petitioner has demonstrated that such legal standard was unreasonably applied by the Supreme Court of Virginia. The following detailed excerpt from the Supreme Court places a fine point on such distinction:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). And as this Court has explained, "[E]valuating whether a rule application

14

was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (internal quotation marks omitted).

. . .

The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under de novo review: Because the Court of Appeals had little doubt that Richter's Strickland claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it. This analysis overlooks arguments that would otherwise justify the state court's result and ignores further limitations of § 2254(d), including its requirement that the state court's decision be evaluated according to the precedents of this Court. See Renico v. Lett, 559 U.S. 766, 778-779 (2010). It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See Lockyer [v. Andrade, 538 U.S. 63, 75, (2003)].

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus

15

from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

The reasons for this approach are familiar. "Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." Calderon v. Thompson, 523 U.S. 538, 555-56 (1998) (internal quotation marks omitted). It "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." [Harris v.] Reed, 489 U.S. [255, 282 (1989)] (Kennedy, J., dissenting).

. . .

Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). . . . Even under de novo review, the standard for judging counsel's representation is a most deferential one. . . .

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S. at 123. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 101-03, 105 (2011).

16

### III. DISCUSSION

#### A. Motion to Supplement the Record

The Court first addresses Petitioner's motion to supplement the record, as it is a threshold issue that could affect Petitioner's claims. Petitioner objects to the R&R's recommendation that this Court deny the pending motion to supplement. Having considered the record on this issue,[5] as well as relevant case law, and having conducted a de novo review, this Court adopts and approves the analysis in the R&R, and adopts the recommendation that the motion to supplement be denied. Set forth below is additional analysis to support the conclusion in the R&R that the "Supreme Court of Virginia fully adjudicated Lawlor's claims on the merits." R&R 11.

In Winston v. Kelly, 592 F.3d 535 (4th Cir. 2010) (Winston I), the Fourth Circuit held that the denial of a state habeas claim is not entitled to deference under 28 U.S.C. § 2254(d) if the state court record "ultimately proves to be incomplete," because a "judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d)." Id. at

---

[5] This Court's references to "the record" include Petitioner's § 2254 habeas petition and all related briefing, including Respondent's motion to dismiss, the R&R, the objections and responses to the R&R, all properly filed exhibits attached to such briefs and motions, as well as relevant portions of the state court record, including the state habeas briefs and associated motions, the appendix to Petitioner's state habeas petition, and the state court "Joint Appendix." The Joint Appendix, the bulk of which is the transcript from Petitioner's jury trial (including voir dire, the guilt phase, the penalty phase, and subsequent sentencing proceedings) spans over 15,000 pages.

17

555-56 (citations omitted). As this Court has previously recognized, "[t]he Fourth Circuit's finding that the state court had not adjudicated the claim on the merits in Winston [I] appeared to rely heavily on the fact that the petitioner offered, 'for the first time in federal habeas proceedings, new, material evidence that the state court could have considered had it permitted further development of the facts.'" Waters v. Clarke, No. 2:11cv630, 2012 WL 4498914, at *6 (E.D. Va. Sept. 28, 2012) (quoting Winston I, 592 F.3d at 555). While the Supreme Court subsequently issued an opinion that arguably called Winston I into doubt, Cullen v. Pinholster, 563 U.S. 170 (2011), the Fourth Circuit later reaffirmed the holding of Winston I, explaining that "nothing in Pinholster indicates that the [Supreme] Court's disposition casts doubt on—much less overrules—our discussion of the adjudicated-on-the-merits requirement in Winston I." Winston v. Pearson, 683 F.3d 489, 501-02 (4th Cir. 2012) (Winston II). As this Court explained after Winston II was decided:

Synthesizing the[se] cases, the threshold question that must be addressed by a district court is whether the claims at issue were "adjudicated on the merits" in the state habeas action. In Winston II, the Fourth Circuit noted that the claim at issue in that case had not been adjudicated on the merits based on the state court's "unreasonable denial of [the petitioner's] requests for discovery and an evidentiary hearing" in state court. Winston II, 683 F.3d at 502 (emphasis added). The Fourth Circuit "found in Winston I that the state court's refusal to allow Winston to develop

18

> the record, <u>combined with the material nature of the</u> <u>evidence that would have been produced in state court</u> <u>were appropriate procedures followed</u>, rendered its decision unbefitting of classification as an adjudication on the merits." <u>Id.</u> (emphasis added).

<u>Waters</u>, 2012 WL 4498914, at *8 (alteration in original).

Here, having reviewed the nature of the requests for discovery that Lawlor made in state court (motion for leave to conduct discovery, motion for expert assistance, and motion for an evidentiary hearing), and the evidence later developed in federal court, this Court finds that the claims that Petitioner now seeks to supplement, Claims V, X, and XII, were fully adjudicated on the merits in state court because: (1) Lawlor fails to demonstrate that any of the state court's decisions denying requests for discovery were unreasonable; and (2) Lawlor fails to demonstrate the "material" nature of the evidence he now seeks to introduce. <u>See</u> <u>Brizuela v. Clarke</u>, 112 F. Supp. 3d 366, 375-76 (E.D. Va. 2015) ("Both <u>Winston I</u> and <u>Winston II</u> are inapposite to this case, as petitioner has failed to identify a single piece of <u>material</u> evidence that the Supreme Court of Virginia failed to consider.").

As to Claim V, Petitioner seeks to introduce a recently created affidavit from defense expert psychopharmacologist Dr. Alexander Morton, Jr. ("Dr. Morton") discussing information he obtained, and conclusions he reached, based on <u>a recent clinical</u> <u>interview</u> of Lawlor. First, although Lawlor did file a motion

in state court during his state habeas proceedings seeking to have an expert psychopharmacologist appointed to interview Petitioner, the denial of such motion was reasonable in light of the fact that evidence already before the state court demonstrated the absence of any need for further factual development. Importantly, the Supreme Court of Virginia already had before it a post-trial declaration prepared by Dr. Morton that expressly addressed expert conclusions/testimony that Dr. Morton asserts he could have, and should have, made at trial had defense counsel been more diligent. State Habeas App. 561-70. Because the state court considered such evidence, but determined that it was not admissible and would not have been rendered admissible if Dr. Morton had the opportunity to interview Petitioner, Lawlor fails to demonstrate an unreasonable refusal by the state court to expand the factual record. See Winston II, 683 F.3d at 496 (explaining that "de novo review might be appropriate" when "a state court unreasonably refuses to permit" further factual development).

Second, comparing Dr. Morton's recently updated post-interview declaration to his earlier declaration that was before the state court, it is apparent that the evidence Lawlor now seeks to introduce is not "'[n]ew, material evidence'" so as to demonstrate that the state court ruling was based on a record that "'ultimately proves to be incomplete.'" Id. at 496-97

(quoting Winston I, 592 F.3d at 555-56). Rather, the updated declaration is similar to the previously introduced declaration, ECF No. 39-1, and Petitioner's Claim V, with or without the new declaration, faces the same hurdles, including the fact that Dr. Morton is precluded from basing his conclusions on hearsay evidence that he obtained solely from interviewing Lawlor, see Lawlor, 288 Va. at 233, 764 S.E.2d at 275 (explaining that "a[n] expert may not relate hearsay evidence to the jury when providing his opinion testimony," and that "Lawlor fails to proffer any evidence Dr. Morton could have gleaned from an interview with him that would have been admissible") (citations omitted). Because the Supreme Court of Virginia fully adjudicated Claim V on the merits, this Court's review is properly constrained to the record before the state court.[6]

As to Claims X and XII, Petitioner seeks to introduce an unsworn psychological expert report from Dr. Victoria Reynolds (discussing Lawlor's alleged sexual victimization when he was a child, as well as his drug and alcohol dependence) and an undated declaration from Dr. Joette James (similarly discussing Lawlor's traumatic childhood experiences and psychological development). ECF Nos. 39-2, 39-3. Importantly, however, Lawlor never sought to present such evidence to the state court.

---

[6] As discussed infra in the Court's analysis of Claim V, such claim would fail with, or without, the proposed supplemental affidavit from Dr. Morton.

21

Rather, in addition to his state-court motion seeking to appoint a psychopharmacologist, Petitioner previously sought: (1) a plenary evidentiary hearing (without any assertion that there were material disputed facts regarding testimony from Dr. Reynolds or James, instead focusing only on evidence relevant to Petitioner's Batson challenge); and (2) "discovery" in order to investigate (a) specific evidence that was allegedly "missing," (b) the mental health records of Petitioner's ex-fiancée, and (c) the qualifications of a blood spatter expert that testified at Lawlor's trial.[7] Accordingly, there having been no specific request at the state level to obtain such evidence, Petitioner did not make diligent efforts to develop this evidence in state court nor did the state court unreasonably foreclose further reasonable development of the record. Cf. Burr v. Lassiter, 513 F. App'x 327, 341 (4th Cir. 2013) ("The fact that [the petitioner's] state post-conviction counsel requested but was denied an evidentiary hearing simply does not, without more, warrant de novo review of the state court's decision.").[8]

---

[7] While the Supreme Court of Virginia denied all three of these motions, it did consider affidavits and documentary evidence advanced by Petitioner and Respondent in support of their respective state habeas briefs. Lawlor, 288 Va. at 248, 764 S.E.2d at 284.

[8] Notably, Claim XII was not even pursued in Petitioner's state habeas petition, but was instead raised during Lawlor's direct appeal. Petitioner therefore plainly fails to demonstrate that the state habeas court improperly precluded expansion of the record in support of a claim that Lawlor never even raised before the state habeas court.

22

Separately, the Court finds that the proposed declarations advanced in support of Claims X and XII are not the type of "material" evidence that would render the state court decision "unbefitting of classification as an adjudication on the merits." Winston II, 683 F.3d at 502. Notably, in denying habeas relief, the Supreme Court of Virginia expressly considered and rejected Petitioner's claim regarding the additional testimony that defense expert Dr. James Hopper purportedly would have offered during the penalty phase if defense counsel had called him as a witness, including: (1) "the abuse and neglect Lawlor suffered as a child" and how it "negatively affected his ability to plan, make decisions, and regulate his emotions and behavior"; and (2) "that Lawlor's history of neglect and abuse and the resulting behavioral and interpersonal deficits led Lawlor to addiction and a cycle of sobriety and relapse, often involving criminal activity and incarceration, and this cycle was exacerbated by the lack of treatment for his underlying issues." Lawlor, 288 Va. at 244, 764 S.E.2d at 282. In concluding that such proffered evidence was merely "cumulative mitigating evidence," the Supreme Court of Virginia carefully reviewed the evidence that had been presented at trial, to include testimony from Lawlor's family and his therapist, Mary Fisher, indicating that "Lawlor was an abused and neglected child who turned to drugs and alcohol" and

23

testimony from "Dr. Morton, Lawlor's expert psychopharmacologist, and Fisher" indicating that "individuals who suffer childhood trauma and have untreated psychiatric problems often turn to drugs and alcohol to 'self-medicate,' and that Lawlor's mental health and substance abuse treatment programs had been ineffective because they failed to address his underlying mental health issues." Id. at 245, 764 S.E.2d at 282. This Court therefore concludes that the newly proffered expert reports merely provide additional "cumulative" mitigating evidence that is not "material" to the proper resolution of Claims X or XII. For all of the above stated reasons, as well as the reasons stated in the R&R, Petitioner's motion to supplement is denied.

## B. Timeliness of § 2254 Petition

The one-year limitations period applicable to the filing of § 2254 motions "is not jurisdictional," but is instead "an affirmative defense that the state bears the burden of asserting." Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002) (citations omitted). Here, Respondent did not raise such defense, and the Magistrate Judge sua sponte noted in the R&R that the instant motion was "timely." Petitioner does not object to such finding, but does "point out" that Petitioner disagrees with the Magistrate Judge's precise calculation of the deadline for filing his § 2254 petition. This Court finds it

unnecessary to address the precise deadline because: (1) Respondent never challenged the timeliness of the § 2254 motion; and (2) it is undisputed that such motion was in fact timely filed. This Court therefore **ADOPTS** only the Magistrate Judge's sua sponte observation that the Petition is timely.

## C. § 2254 Claim by Claim Analysis

The R&R individually addressed each of Petitioner's eighteen habeas claims. Petitioner filed objections to the Magistrate Judge's Recommendation as to sixteen of the eighteen claims. For each claim on which Petitioner properly advanced specific and particularized objections, this Court conducted a de novo review, and the results of such review are articulated below. Midgette, 478 F.3d at 621-22. For those matters that lack a particularized objection, or any objection at all, the Court has performed a "clear error" review. Diamond, 416 F.3d at 315. Prior to reviewing each claim, the Court reiterates that the question on federal habeas review is not whether this Court agrees with the analysis/finding of the Supreme Court of Virginia, but rather, whether the state court's ruling was an "unreasonable application of clearly established Federal law." Richter, 562 U.S. at 101 (citation and quotation marks omitted). Stated differently, habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the

state court's decision." Id. (citations and quotation marks omitted).

## 1. Claim I

Petitioner's first claim asserts that the trial court improperly prevented the defense from asking the necessary voir dire questions to identify "substantially impaired" jurors. Such claim asserts both that defense counsel was unable to identify jurors who may have predetermined that the death penalty was the proper punishment and jurors who would not fairly consider mitigating evidence presented during the penalty phase. The Supreme Court of Virginia rejected such claim on direct appeal. The R&R independently addressed each subpart of such claim and recommends dismissal of both subparts. Petitioner objects to the R&R's findings as to both subparts, and after conducting a de novo review, this Court adopts the analysis and recommendations in the R&R, with the following clarification.

As highlighted in Petitioner's objections, the Supreme Court has held as follows:

Any juror who would impose death regardless of the facts and circumstances of conviction cannot follow the dictates of law. It may be that a juror could, in good conscience, swear to uphold the law and yet be unaware that maintaining such dogmatic beliefs about the death penalty would prevent him or her from doing so. A defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors function under such misconception.

. . . Petitioner was entitled, upon his request, to inquiry discerning those jurors who, even prior to the State's case in chief, had predetermined the terminating issue of his trial, that being whether to impose the death penalty.

Morgan v. Illinois, 504 U.S. 719, 735-36 (1992) (internal citations and footnote omitted). Applying such rule, Lawlor asserts that defense counsel was improperly limited from conducting an adequate voir dire, both in violation of Morgan, and in violation of the Supreme Court's subsequent finding in Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007) that "sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence" presented by the defense.

A review of Morgan and Abdul-Kabir, and of Lawlor's trial transcript, plainly illustrate that the Supreme Court of Virginia did not unreasonably apply controlling Supreme Court precedent. Notably, while the trial transcript reveals that the trial judge limited defense counsel from asking, and re-asking, multiple questions going to the issue of a prospective juror's "viewpoint" on the death penalty and/or viewpoint as to specific species of mitigating evidence, such limitations were only enforced after sufficient questions were asked to ensure that prospective jurors: (1) had not predetermined the appropriate punishment based on personal beliefs (in favor of, or against, the death penalty); and (2) would not decide on whether death was an appropriate punishment in this case until after they

considered all relevant aggravating and mitigating circumstances. See, e.g., JA 8679-85, 8786-92, 8867-76.[9] Petitioner fails to demonstrate that clearly established Supreme Court precedent mandates a more searching inquiry; to the contrary, the trial judge clearly acted within his discretion when denying Petitioner's counsel the right to ask certain additional questions regarding prospective jurors' viewpoints on the death penalty and/or their viewpoint on specifically identified species of mitigation evidence. See Yeatts v. Angelone, 166 F.3d 255, 265-66 (4th Cir. 1999) (explaining that a "capital defendant must be allowed on voir dire to ascertain whether prospective jurors are unalterably in favor of the death penalty in every case," and while asking questions "directed simply to whether a jury can be fair . . . are insufficient," asking a prospective juror whether he or she would "be able to consider voting for a sentence less than death," along with associated questions addressing whether he or she would be willing to consider imposing death, is sufficient to determine whether such juror "entertains opinions on capital punishment that would prevent or substantially impair the performance of

---

[9] Such transcript pages are examples of the questions asked, primarily by the state-court judge, to several different panels of prospective jurors. While such citation is only an excerpt of relevant portions of the voir dire, Petitioner fails to specifically identify any juror that was seated on the jury who was not asked adequate preliminary questions, and/or follow up questions, in order to permit defense counsel to determine whether such juror was "substantially impaired."

his [or her] duties as a juror") (citation omitted); United States v. Fulks, 454 F.3d 410, 428 (4th Cir. 2006) ("Morgan only requires the exclusion of jurors who would categorically reject any mitigating evidence offered by the defendant.") (citations omitted). Petitioner's first claim is therefore dismissed.

## 2. Claim II

Petitioner's second claim asserts that his due process rights were violated based on the trial court's contradictory rulings and hostile treatment of defense counsel during voir dire. Petitioner does not object to the analysis/recommendation set forth in the R&R on this issue. Having conducted a review for clear error, this Court adopts and approves the analysis and conclusion set forth in the R&R, and Claim II is dismissed.

## 3. Claim III

Petitioner's third claim asserts that the trial court erred by allowing Petitioner to be convicted and sentenced by a jury that was assembled in a discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79 (1986). Petitioner separately asserts that his trial counsel was constitutionally deficient for failing to raise a Batson challenge at the conclusion of jury selection. The Supreme Court of Virginia held that Petitioner's direct Batson claim (asserting that the trial court erred) was procedurally defaulted under Virginia law, and that his ineffective assistance claim failed to satisfy either prong

29

of the Strickland test. The R&R concludes that because the
state court's default analysis was based on an adequate and
independent state law ground, Lawlor's direct claim must fail
unless he can demonstrate "cause" and "prejudice" sufficient to
overcome his default. See Mu'Min v. Pruett, 125 F.3d 192, 196
(4th Cir. 1997) ("Absent cause and prejudice or a miscarriage of
justice, a federal court sitting in habeas may not review a
constitutional claim when a state court has declined to consider
its merits on the basis of an adequate and independent state
procedural rule.") (citation omitted). The R&R further
concluded that because the Supreme Court of Virginia's
Strickland analysis was not unreasonable, Petitioner cannot
obtain relief on his ineffective assistance claim, nor can he
use counsel's allegedly deficient performance as a basis to
excuse the default of the direct Batson claim. While Petitioner
purports to broadly object to "each and every ground" on which
the Magistrate Judge ruled, he does not challenge the fact that
his direct Batson claim was procedurally defaulted pursuant to
an adequate and independent state procedural rule, but instead
squarely challenges the application of Strickland with respect
to defense counsel's failure to raise a Batson claim. Finding
no clear error in the R&R's conclusion that Petitioner's direct
Batson claim is defaulted based on an adequate and independent
state rule, and having reviewed the remainder of this issue de

novo, this Court adopts and approves the analysis and recommendation in the R&R, as clarified below.

As already emphasized herein, the question for this Court is not whether Petitioner has raised a viable, or even "a strong case for relief" under Strickland, but rather, "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 102, 105. Here, the Supreme Court of Virginia had a "reasonable argument" that defense counsel's decision not to advance a Batson challenge satisfied the deferential Strickland performance standard because, even in hindsight, Petitioner's Batson argument in his state habeas petition relied only on statistics. Although Petitioner appears correct that there was mathematical evidence of a possible bias, there was no other evidence of bias to undercut the reasonableness of the state court's findings. As explained in a fractured opinion issued by the Fourth Circuit in Allen v. Lee, 366 F.3d 319 (4th Cir. 2004) (en banc), with the fractured nature of such opinion aptly demonstrating the degree to which "reasonable minds" can differ on Batson's application in a case where the prosecution uses most of its preemptory strikes on minority members of the venire, the Allen majority opinion concludes that the use of "raw statistics" to determine whether a prima facie Batson claim is proven is "both selective and uninformative," and that while statistics are surely an

important factor in the Batson analysis, they are "at best, manipulable and untrustworthy absent a holistic view of the circumstances to which they apply."    Id. at 330.    Stated differently, while Batson itself states that "a 'pattern' of strikes against [a given racial group] included in the particular venire might give rise to an inference of discrimination," it also states that the court "should consider all relevant circumstances" to determine whether a defendant has established a prima facie case.    Batson, 476 U.S. at 96-97 (emphasis added).    Here, the Supreme Court of Virginia was not unreasonable in concluding that defense counsel performed within constitutional requirements by opting not to raise a Batson challenge based on statistics alone in a case where neither the defendant, nor the victim, were minorities,[10] and where Petitioner fails to demonstrate that minority venire members were questioned differently, or otherwise treated differently, than non-minority members.    Stated differently, the Supreme Court of Virginia was not unreasonable in finding that there was

---

[10] Petitioner asserts that the Magistrate Judge improperly applied a "more onerous prima facie test" for establishing an inference of discrimination based on the fact that Petitioner was not the same race as the struck jurors. ECF No. 53, at 12. While this Court's review of the R&R suggests that a more onerous test was not applied, even if it was, this Court does not apply such a test in performing its de novo review, but instead clarifies that a criminal defendant's race vis-à-vis a struck juror's race is one of the many relevant considerations that make up the totality test. Here, the difference in race is worthy of recognition if only to highlight the absence of other evidence, even circumstantial, suggesting that race was a motivating factor in jury selection.

no other direct or circumstantial evidence of a bias, and that statistics alone did not mandate that a motion be filed.

Alternatively, Petitioner fails to demonstrate that the Supreme Court of Virginia was unreasonable in its Strickland prejudice analysis. First, Petitioner's assertion, that the Supreme Court of Virginia erred in failing to recognize that Batson error qualifies as a "structural error," is rejected as the question before this Court is whether Supreme Court precedent clearly establishes that counsel's failure to raise a Batson claim constitutes structural error, and it is decidedly not so established. See United States v. Kehoe, 712 F.3d 1251, 1253 (8th Cir. 2013) (discussing Eighth Circuit precedent holding that "an ineffective assistance of counsel claim premised on a Batson error" is not "'structural error' entitled to a presumption of prejudice") (footnote omitted); Scott v. Hubert, 610 F. App'x 433, 433-34 (5th Cir. 2015) (holding that, although the Fifth Circuit recognizes a substantive Batson violation as "a structural error," Strickland prejudice "is not presumed" for § 2254 claims asserting that "trial counsel rendered ineffective assistance by failing to make an objection under Batson"; rather, the petitioner is "required to show that his counsel's failure to raise Batson objections during voir dire prejudiced his defense"). Second, the Supreme Court of Virginia cannot be deemed "unreasonable" in concluding that the

33

trial record did not otherwise support a finding of Strickland prejudice, because for the reasons discussed above, and based on additional facts in the record, there is at least a "reasonable argument" that Petitioner fails to establish a reasonable probability that a timely raised Batson claim would have proceeded past the prima facie stage.[11]

Because Petitioner's ineffective assistance of counsel claim fails to establish that the Supreme Court of Virginia unreasonably applied Strickland and/or Batson, his ineffective assistance claim fails on the merits.[12] Moreover, although this

---

[11] Although not necessary to the Court's findings herein, the Court notes that even if a prima facie claim is assumed, substantial questions remain as to whether Lawlor could have continued beyond the prima facie stage and actually prevailed on a timely raised Batson claim. Specifically, the record includes several relevant affidavits, including those from trial counsel, that suggest a Batson claim was unlikely to succeed. Two of the struck jurors at issue revealed viewpoints on the death penalty that were favorable to the defense, and another had close family members with a drug abuse history that concerned the prosecution. See Feb. 14, 2013, Mo. Leave File Suppl. Aff. Exh. B, JA 8420-21, 8458, 8460-62, 9272, 9275, 9279. There also appear to be questions as to whether all of the struck jurors were readily identifiable as minorities. Cf. Scott, 610 F. App'x at 435 (holding that the § 2254 petitioner failed to demonstrate Strickland prejudice even though he did establish a prima facie claim under Batson).

[12] Lawlor asserts in his objections to the R&R that the Magistrate Judge "overlooked" Lawlor's secondary argument asserting that, even if the Batson error is not structural, Lawlor demonstrates Strickland prejudice. ECF No. 53, at 13. Such claim of error has little force, as Lawlor's secondary argument is just that, with Lawlor's § 2254 motion relying on the conclusory assertion that "confidence is undermined in this capital trial where the state improperly discriminated against minorities in jury selection." ECF No. 20, at 18. Notwithstanding the brief and conclusory nature of such argument, the R&R addresses it, concluding that prejudice is not established in the absence of evidence calling into question the impartiality of the jury that was seated in this case. R&R 34. This Court therefore rejects Lawlor's assertion that the Magistrate Judge "overlooked" a portion of this claim. Moreover, even if the Magistrate

34

Court previously concluded that Lawlor's direct Batson claim was defaulted, and Petitioner fails to overcome such default through demonstrating ineffective assistance, were this Court authorized to consider the merits of Lawlor's direct claim, the claim would be denied. For the same reasons that this Court concludes that defense counsel was not constitutionally deficient for failing to raise Batson at trial, this Court would conclude that Lawlor fails to demonstrate that the trial court was obligated to affirmatively "make inquiries" into whether the prosecution used its strikes in an unconstitutional manner.[13]    Claim III is therefore dismissed.

## 4. Claim IV

Petitioner's fourth claim asserts that trial counsel rendered ineffective assistance by failing to understand basic Virginia law establishing the distinctions between various degrees of murder. The Supreme Court of Virginia concluded that Petitioner failed to demonstrate Strickland prejudice, and the

---

Judge overlooked some aspect of the prejudice analysis, such claim has been reviewed de novo, and this Court finds that Lawlor fails to demonstrate the absence of a reasonable argument in support of the Supreme Court of Virginia's finding that Lawlor's failure to demonstrate a prima facie Batson violation results in his failure to demonstrate Strickland prejudice.   See Lawlor, 288 Va. at 230, 764 S.E.2d at 273 ("Lawlor has failed to establish a prima facie case of purposeful discrimination . . . that the trial court would have accepted.") (emphasis added).

[13] Not only does the record fail to suggest that the trial court was itself obligated to raise Batson sua sponte, but the trial judge did in fact take the affirmative step of asking counsel for both sides whether they were satisfied with the composition of the jury, and they both responded in the affirmative.  JA 9448.

Magistrate Judge concluded that the Supreme Court of Virginia's application of Strickland was not unreasonable. Petitioner objects to the Magistrate Judge's analysis contending, among other things, that Petitioner was improperly held to an elevated standard on Strickland's prejudice prong.

Having conducted a de novo review, this Court adopts and approves the Magistrate Judge's analysis and conclusions in full. First, a review of the trial transcript reveals the absence of an "unreasonable" application of Strickland associated with defense counsel's "concession" during closing argument that Petitioner was guilty of first degree murder because it is abundantly clear from the record, including closing arguments, that defense counsel was not conceding premeditation.[14] Moreover, as the Supreme Court of Virginia and the R&R both conclude, the jury instruction reciting the elements on the various degrees of murder, including capital

---

[14] Petitioner suggests that it was constitutionally deficient for defense counsel to ask the jury for a second degree murder conviction during opening statements, and then ask for a first degree murder conviction during closing arguments. ECF No 20, at 22. Such claim is based on the contention that the jury may have interpreted the request during closing as an admission of guilt to premeditated first degree murder. However, in light of defense counsel's repeated arguments against a finding of premeditation during his closing argument, there is no force whatsoever behind the contention that the jury conceivably interpreted the request during closing as a "diametrically opposite" legal theory from what the defense asserted during opening. Rather, the only reasonable interpretation of such latter request was that it was an acknowledgement that, based on the compelling evidence presented by the prosecution at trial, it was likely that the jury would find that Lawlor either abducted, or attempted to rape, the victim, which would elevate un-premeditated murder from second degree murder to first degree felony murder.

36

murder, premediated first degree murder, first degree felony murder, and second degree murder, were accurate. Accordingly, defense counsel's mistakes of law, if any, were remedied by the fact that the jury was properly instructed and the fact that, as illustrated by the transcript excerpts contained in the R&R, it is abundantly clear that the defense was not conceding premeditation.

As to Petitioner's contention that the Supreme Court of Virginia applied an "elevated" prejudice standard, such argument is similarly rejected. Even if the state court habeas opinion is read as making an opaque reference to whether Lawlor effectively establishes an alternative defense that "would have been" successful: (1) the case citation immediately following such opaque statement and the associated parenthetical authored by the Supreme Court of Virginia clearly illustrates that it was applying the correct "reasonable probability" prejudice test; and (2) the conclusion of the Supreme Court of Virginia's analysis of this claim held as follows: "Thus, Lawlor has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." Lawlor, 288 Va. at 237, 764 S.E.2d at 277-78 (emphasis added).[15] This Court similarly rejects

---

[15] Even if the state court improperly applied an elevated standard, which this Court does not believe to have occurred, an independent analysis of

37

Petitioner's assertion that the state court's habeas ruling was unreasonable in light of the "cumulative prejudice" suffered by Lawlor because there was no "prejudice" to cumulate.[16]

In sum, the Supreme Court of Virginia was not unreasonable in concluding that Petitioner failed to demonstrate Strickland

---

this issue, without affording any deference to the state court, would lead to the same conclusion—Lawlor fails to establish Strickland prejudice. Moreover, because the defense trial strategy during the guilt phase was clearly aimed at avoiding a capital conviction in order to avoid a death sentence, this Court's independent analysis of counsel's performance would conclude that even if counsel made legal errors on this issue, they did not rise to the level necessary to render counsel's performance constitutionally deficient.

[16] Petitioner also asserts that defense counsel's faulty representation resulted in counsel failing to ask the court for an instruction differentiating between the types of first degree murder, and that the prejudice resulting therefrom was compounded by the trial court's erroneous jury instruction indicating that if Lawlor was grossly intoxicated he could not be found guilty of "capital murder or murder in the first degree." ECF No. 53, at 14; JA 10520. The error in such instruction is that although intoxication is a viable defense to premeditated murder in the first degree, it is not a viable defense to felony murder in the first degree. Importantly, however, it was defense counsel that: (1) recognized the misstatement in the instruction as it was being read to the jury; (2) immediately informed the trial court of the error during a bench conference; (3) explained to the court during such bench conference that Petitioner could be convicted of first degree felony murder without premeditation; and (4) convinced the court to correct the erroneous instruction. The corrected instruction was then read to the jury before deliberations commenced, and the judge assured the jury that they would have the corrected instruction before them during deliberations. JA 10522-28. Petitioner's present effort to rely on a jury instruction that was immediately corrected after being read fails on its face. Moreover, assuming that the judge, defense counsel, or even the jury was somewhat confused as to the difference between felony first degree murder and premeditated first degree murder, it is highly unlikely that such confusion had any impact on the outcome of the guilt phase because the jury unanimously found Lawlor guilty of capital murder with premeditation. The Supreme Court of Virginia was therefore not unreasonable in concluding either that defense counsel did not perform deficiently by failing to ask for clearer instructions defining the gradations of murder, Lawlor, 288 Va. at 235-37, 764 S.E.2d at 276-78, nor in concluding that Petitioner failed to demonstrate Strickland prejudice based on the "concession" made during closing, whether such concession is considered alone or in conjunction with other purported prejudice.

prejudice associated with defense counsel's request that the jury return a verdict of first degree murder. Id. at 237-38, 764 S.E.2d 277-78. Petitioner's claim is therefore dismissed.

## 5. Claim V

Petitioner's fifth claim asserts that trial counsel was constitutionally deficient in the handling of defense expert Dr. Morton, an expert psychopharmacologist. Petitioner asserts that counsel was deficient for failing to ensure that Dr. Morton interviewed Petitioner prior to trial, failing to adequately prepare Dr. Morton to testify, and failing to ask Dr. Morton whether Petitioner, or a hypothetical person, would have been capable of premeditation after consuming "the better part of a case of beer" and "7-10 grams" of crack. State Habeas App. 570. While Dr. Morton did testify at trial, he testified only as a "teaching expert," explaining the general effects of using large quantities of crack and the impact of mixing alcohol with large quantities of crack. The Supreme Court of Virginia held that Petitioner failed to satisfy either prong of Strickland and the R&R concluded that such analysis was not unreasonable. Having considered Petitioner's objections to the R&R and conducted a de novo review, this Court largely adopts the analysis in the R&R, with some clarifications regarding the admissibility of Dr. Morton's testimony under Virginia law, and concludes that the Supreme Court of Virginia did not unreasonably apply Strickland.

First, the Court rejects Petitioner's objection contending that the state court ruling was based on an unreasonable factual finding associated with Dr. Morton's failure to interview Petitioner prior to trial. The Supreme Court of Virginia reasonably concluded that such an interview would not have produced admissible evidence which Dr. Morton could rely on, and relay from the stand, regarding either Lawlor's history of drug use or his drug use on the night of the murder. The state court therefore reasonably concluded that neither prong of Strickland was satisfied.[17]

---

[17] Whether information about Petitioner's drug history could have been introduced through other witnesses and then relied on by Dr. Morton is a separate issue because it turns on whether counsel was deficient for failing to provide a better response to the prosecution's "relevance" objection made when witness Charles Wakefield was testifying. JA 10322-34. Even assuming that this issue constitutes a separate subclaim that was properly presented to the Supreme Court of Virginia, and further assuming that no deference is owed because such subclaim was not squarely addressed by the state court, this Court's independent analysis of such subclaim would result in its denial because the record reveals a lack of prejudice. See Winston v. Pearson, 683 F.3d 489, 496 (4th Cir. 2012) ("[W]hen a state court does not adjudicate a claim on the merits, AEDPA deference is inappropriate and a federal court must review the claim de novo."); Wiggins, 539 U.S. at 534 (conducting an independent analysis of the Strickland prejudice prong because "neither of the state courts below reached this prong of the Strickland analysis"). Importantly, Petitioner did introduce evidence at trial indicating that he had substance abuse issues and had been to drug rehabilitation, and Lawlor fails to demonstrate in his § 2254 Petition how introduction of any further "details" about his drug/alcohol history would have altered Dr. Morton's testimony so as to make Wakefield's proposed testimony directly relevant to Dr. Morton's opinion. Moreover, while this Court concluded above in Part III.A that it would not consider Dr. Morton's supplemental affidavit because it was not before the Supreme Court of Virginia, to the extent that a de novo consideration of this subclaim permits this Court to consider the supplement, such document only further supports this Court's analysis. Notably, even after Dr. Morton performed a "clinical interview" of Lawlor, he failed to provide details as to how Lawlor's specific history impacted Lawlor's, or would have impacted a hypothetical person's,

40

Second, the Court rejects Petitioner's objection contending that the Supreme Court of Virginia's habeas opinion was based on an unreasonable factual finding regarding the quantity of crack cocaine (6 grams) and beer (an unknown quantity) ingested by Lawlor on the night of the murder. Supporting the Supreme Court of Virginia's finding that Lawlor consumed an indeterminate amount of beer, Mr. Johnson's trial testimony was uncertain and/or equivocal as to the number of beers that Lawlor consumed on the night of the murder (JA 10197 - "I can't tell you how many he was drinking") (JA 10203 - indicating that Mr. Johnson drank "maybe about three or four" and that Johnson drank "like one to [Lawlor's] three or four") (JA 10255 - indicating that Mr. Johnson was not counting how many beers Lawlor was drinking).[18] Similarly, the Supreme Court of Virginia's finding that Lawlor consumed 6 grams of crack was not unreasonable as it was plainly supported by the trial transcript. As stated

---

ability to premeditate. Rather, Dr. Morton offers only the overly broad conclusion that, in his opinion, a complete drug history was "necessary to understanding the nature of Lawlor's addiction and his physiological response to extreme intoxication on the night of the crime." ECF No. 39-1 ¶ 16. Such broad statement provides no clarity on how Lawlor's actual drug/alcohol history would have changed Dr. Morton's trial testimony, and thus, falls far short of the showing necessary to undermine confidence in the outcome of the trial. Accordingly, this subclaim, even if considered de novo, is denied for lack of Strickland prejudice.

[18] Mr. Johnson, who was with Lawlor for several hours prior to the murder, first helped Lawlor obtain the crack cocaine at issue and then helped Lawlor obtain powder cocaine that Mr. Johnson subsequently "cooked" into crack cocaine. Mr. Johnson personally smoked a portion of both the purchased crack cocaine and the crack cocaine that he manufactured/cooked from the purchased powder cocaine.

herein, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"; rather, even when "reasonable minds reviewing the record might disagree" about the finding in question, such potential for disagreement is insufficient to supersede the finding of the state court.[19] Wood, 558 U.S. at 301 (citations omitted).

Third, this Court rejects Petitioner's contention that the Supreme Court of Virginia unreasonably applied Strickland with respect to its finding that Dr. Morton's proffered post-trial expert opinion was inadmissible because it went to the ultimate fact at issue in the case. See Waye v. Com., 219 Va. 683, 696,

---

[19] While unnecessary to support the conclusion reached herein, on this record, this Court would in fact reach the same conclusion as the Supreme Court of Virginia as to the crack calculation if it were called on to make an independent finding. As explained in the R&R, Mr. Johnson testified that he smoked approximately 1 gram of the first eight-ball of crack and 1 gram of the second eight-ball (meaning that Lawlor smoked 2.5 grams of each of the first two eight-balls, for a total of 5 grams). JA 10246. The best interpretation of the evidence as to the third eight-ball is that only half of it was collectively ingested by Lawlor and Mr. Johnson. Petitioner's contention that the second half of the third eight-ball was cooked into crack and consumed by Lawlor is based on a strained reading of the following portion of the trial transcript:

Q. And of that last half of that eight-ball, well, eight-ball, you said that's three and a half grams?
A. Yeah, 3.5.
Q. And you said you cooked half of that up. How much of that did he smoke?
A. Of the powder that I cooked up?
Q. Yeah.
A. I'd say maybe about, maybe about a gram of it.

JA 10215 (emphasis added). While Mr. Johnson's initial testimony discussing the third eight-ball raised the inference that he may have cooked powder cocaine into crack in two separate batches, JA 10211, the record not only fails to reveal that there was a second "cooking" event, but supports the contrary as Mr. Johnson's subsequent testimony confirms that he "only cooked half" of the powder cocaine into crack. JA 10248.

42

251 S.E.2d 202, 210 (1979) (holding that "[t]he proffered expert opinion, that the defendant did not, in fact, deliberate and premeditate at the time of the killing, was properly ruled inadmissible" as it went to the ultimate fact at issue and "would have invaded the province of the jury") (citations omitted). While not discussed or distinguished in the R&R, Petitioner cites Fitzgerald v. Com., 223 Va. 615, 292 S.E.2d 798 (1982) for the proposition that, under Virginia law, a jury is "entitled to have the benefit of expert opinion as to the cumulative effect of [drugs] and alcohol, in answer to a hypothetical question based upon evidence in the record." Id. at 629-30, 292 S.E.2d at 806 (emphasis added). Stated differently, Virginia law prevented defense counsel from asking a testifying expert whether Lawlor premeditated, but it permitted counsel to ask such an expert if a hypothetical person who ingested the same quantity of drugs and alcohol that were ingested by Lawlor could have premeditated. Lawlor therefore asserts that his counsel was constitutionally deficient for failing to elicit "hypothetical" testimony from Dr. Morton.

Because reasonable minds could differ on such issue, this Court cannot conclude that the Supreme Court of Virginia's application of Strickland was unreasonable. Importantly, the post-trial affidavit submitted by Dr. Morton to the Supreme Court of Virginia proffered testimony that was specific to

43

Lawlor, which on its face supports the Supreme Court of Virginia's reliance on Waye for the proposition that Lawlor fails to demonstrate that his counsel's performance was constitutionally deficient. Specifically, Dr. Morton's proffered affidavit states: "I was prepared to testify that in my expert opinion, to a reasonable degree of scientific certainty, <u>Mr. Lawlor would not have been able to form the necessary intent to premeditate</u> given the amount of alcohol and crack cocaine he had ingested." State Habeas App. 569-70 (emphasis added). It was thus not unreasonable for the state court to find a lack of constitutionally deficient performance based on defense counsel's decision not to press the issue further in the face of the prosecution's objection and the rule established in Waye.[20] See Richardson v. Branker, 668 F.3d 128, 141 (4th Cir. 2012) (explaining that, when a federal habeas ineffective assistance claim "involves an issue unique to state

_____

[20] As previously discussed, this Court denied Lawlor's request that this Court consider a newly updated affidavit from Dr. Morton that was prepared <u>after</u> the Supreme Court of Virginia issued its habeas opinion. Such proffered affidavit continues the contention that Lawlor consumed "at least seven grams" of crack, modifying the quantity of beer to be "at least 12 beers." ECF No. 39-1 ¶ 13. Curiously, while plainly <u>not</u> derived from new evidence discovered during Dr. Morton's clinical interview of Lawlor, Dr. Morton's "new" proposed testimony is that "<u>a hypothetical person</u> who consumed at least seven grams of crack cocaine and at least twelve beers would not be able to premeditate or deliberate." <u>Id.</u> (emphasis added). Such modified proffer was not before the Supreme Court of Virginia, and it is therefore not considered here. Moreover, even if such proffer were properly before this Court, it would not warrant habeas relief as it is predicated on hearsay that conflicts with the quantities of crack and beer reasonably found by the Supreme Court of Virginia.

44

law, . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law" as it is "beyond the mandate of federal habeas courts to correct the interpretation by state courts of a state's own laws") (quotation marks and citation omitted).

Fourth, this Court agrees with the finding in the R&R that Petitioner fails to demonstrate that the Supreme Court of Virginia unreasonably found a lack of Strickland prejudice. Even assuming that defense counsel had acted differently and sought to introduce Dr. Morton's ultimate conclusion as proffered in the affidavit presented to the state habeas court, Lawlor fails to demonstrate a reasonable probability that such evidence would have been admitted over the prosecution's objection because it violated Waye. See Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. 2014) (declining to disturb the state court's finding that the petitioner "was not prejudiced within the meaning of Strickland when his trial counsel failed to make an attempt to introduce inadmissible evidence"). Moreover, even if defense counsel had invoked Fitzgerald, and Dr. Morton was permitted to testify in the form of a hypothetical: (1) Lawlor fails to demonstrate that the Supreme Court of Virginia was unreasonable in finding the absence of a reasonable likelihood that additional testimony from Dr. Morton would have changed the outcome of the trial in

45

light of the favorable evidence that was already presented by Dr. Morton;[21] and (2) because the defense failed to proffer the contents of additional admissible hypothetical testimony to the state habeas court, any purported prejudice flowing from the failure to present such testimony is speculative. See Goins, 576 F. App'x at 173 (holding that the petitioner's "failure to make a specific proffer" as to "what an expert witness would have testified" if counsel had performed a more complete investigation "reduces any claim of prejudice to mere speculation and is fatal to his claim") (citation omitted).

Fifth and finally, because the Supreme Court of Virginia reasonably determined that Lawlor ingested 6 grams of crack and an indeterminate amount of beer, and because Dr. Morton's conclusion in his post-trial affidavit submitted to the Supreme Court of Virginia expressly relies on the fact that Lawlor ingested "the better part of a case of beer" and "between seven

---

[21] See, e.g., JA 10380 (discussing the "profound psychiatric symptoms" "inability to think clearly" "paranoia," "possibl[e] aggression," etc. that Dr. Morton would expect to occur if someone consumed 3.5 grams of crack in an 8 hour period and that an increase in dose leads to an increase in symptoms, "both as far as frequency and intensity"); JA 10381-82 (opining that consuming more than 3.5 grams of crack in an 8 hour period would cause "profound and marke[d]" changes in conduct, and such a "massive amount" could lead to "cardiovascular collapse" from the "stimulation to the heart or having a stroke"). Although this Court could conceivably have reached a different interpretation than that reached by the Supreme Court of Virginia regarding the strength of Dr. Morton's admitted testimony, this Court is not tasked with evaluating whether it "agrees" with the state habeas court's findings, but rather, need ask only whether such findings were objectively unreasonable. Bell, 236 F.3d at 158; Wood, 558 U.S. at 301. Because such high bar has plainly not been cleared by Petitioner, the state court ruling must stand undisturbed.

46

and ten grams of cocaine," the Supreme Court of Virginia reasonably found that such proffered expert opinion was not based on facts in evidence, and would therefore not have been admissible under any circumstances.[22] Stated differently, citing Fitzgerald was unlikely to change the outcome of trial because even if Dr. Morton modified the testimony he proffered to the state habeas court about the effects on Lawlor and sought to present the precise same testimony in the form of a hypothetical, such hypothetical was both inadmissible and was unlikely to change any juror's perception of the case because it was based on drug/alcohol quantities in excess of the record evidence. See Gray v. Zook, 806 F.3d 783, 799 (4th Cir. 2015) ("[W]hile Gray's new expert affidavits provide a great deal of information about the cumulative effects of PCP, their conclusions necessarily remain speculative without specific evidence of how intoxicated Gray was at the time of the crimes."). For all of these reasons, Claim V is dismissed.

## 6. Claim VI

Petitioner's sixth claim asserts that his jury instructions were unconstitutional with respect to the mens rea for murder and that trial counsel rendered ineffective assistance by

---

[22] As noted above, Dr. Morton's updated affidavit, submitted for the first time to this Court and prepared after Dr. Morton interviewed Lawlor, continues to rely on a quantity of crack and beer in excess of that found by the Supreme Court of Virginia, and thus, would similarly have been inadmissible under any circumstances.

failing to object to such instructions.[23]   The Supreme Court of
Virginia concluded that Petitioner's direct claim was defaulted
and that Lawlor failed to demonstrate that defense counsel
performed at a constitutionally deficient level.   The R&R
concludes that the Supreme Court of Virginia's finding of
default was based on an adequate state law ground, and that its
application of Strickland's performance prong was not
unreasonable.   The R&R independently concludes that Lawlor also
fails to satisfy Strickland's prejudice prong.   Petitioner did
not object to the default finding, but objects to the Strickland
analysis, asserting that counsel's ineffectiveness, and the
prejudice flowing therefrom, excuses his default.

       After adopting the unobjected-to default finding, and after
conducting a de novo review of the Strickland claim, this Court
adopts and approves the analysis and recommendation in the R&R.
First, while the requisite review standard only asks this Court
to determine whether the Supreme Court of Virginia unreasonably
applied Strickland's performance prong (it did not), this Court
would have reached the same conclusion in the first instance
regarding counsel's alleged failure to advance additional
objections to the jury instructions.       Although jury

_____

[23] To be cognizable on federal habeas review, Petitioner's challenge to
the jury instructions must assert and demonstrate that the instructions
were invalid under the Constitution, not merely that the instructions were
invalid under Virginia law.

48

instructions, which seek to distill complex legal issues into clear statements of law, are often subject to some degree of "improvement," the instructions given in this case, including the model instruction on intending the natural and probable consequences of one's acts,[24] were an adequate and accurate statement of the law. The concept of "specific intent" was sufficiently subsumed within the capital murder instructions requiring that the killing was "willful, deliberate, and premeditated," further defining such phrase as requiring "a specific intent to kill adopted at some time before the killing" which need only exist for a moment before the fatal act, but requires "the accused has time to think <u>and did intend to kill</u>." JA 10511, 10514, 10517 (emphasis added). As previously discussed in the analysis of Claim IV, no further clarity was necessary to differentiate the different species of first degree murder, and even if such clarification would have been "helpful," in light of the fact that the jury unanimously found Lawlor guilty of <u>premeditated capital</u> murder, there is no reasonable assertion of prejudice. Accordingly, the Supreme

---

[24] Defense counsel objected to such instruction as both confusing and as an inaccurate statement of the law. While it is easy to argue in hindsight that a "better" objection should have been advanced, defense counsel's efforts to exclude such instruction were well within the broad range of reasonably competent assistance in light of controlling Virginia law. <u>See</u> <u>Morva v. Com.</u>, 278 Va. 329, 342, 683 S.E.2d 553, 561 (2009) (rejecting a challenge to the same instruction in a capital murder case).

Court of Virginia's application of Strickland was not unreasonable.

Additionally, this Court agrees with the Magistrate Judge's independent analysis holding that Petitioner fails to satisfy Strickland's prejudice prong. Neither Lawlor's § 2254 motion, nor any of his associated filings, proffer the "specific intent" instruction that Lawlor asserts was wrongly omitted. Instead, Petitioner merely speculates that the jury was confused by the court's instructions. Such speculation is plainly insufficient to carry Lawlor's burden under Strickland's prejudice prong.

For all of these reasons, this Court adopts the R&R's conclusion that Lawlor fails to demonstrate that the Supreme Court of Virginia unreasonably applied Strickland (either as a means to excuse his default, or on his freestanding ineffective assistance claim). Additionally, this Court adopts the independent prejudice analysis in the R&R, with the clarification that this Court's analysis does not consider whether Lawlor failed to demonstrate that corrected/additional instructions "would have affected the jury's decision," R&R 48 (emphasis added), but rather, is based on Lawlor's failure to demonstrate a "reasonable probability" that corrected/additional instructions would have affected the jury's guilt phase verdict. Claim VI is therefore dismissed.

50

## 7. Claims VII & VIII

Petitioner's seventh and eighth claims assert that the prosecution violated due process by: (1) knowingly presenting the false testimony of Detective John Tuller (Napue claim);[25] and (2) failing to disclose favorable material evidence regarding Detective Tuller's expert credentials/testimony (Brady claim).[26] The Supreme Court of Virginia concluded that both Petitioner's Napue claim and his Brady claim were defaulted because the relevant facts were "known or available to Lawlor at the time of his trial," meaning that these issues "could have been raised at trial and on direct appeal." Lawlor, 288 Va. at 225, 764 S.E.2d at 270 (citation omitted). The Magistrate Judge concluded that the Supreme Court of Virginia's finding of default was based on an adequate state law ground as to both Claims VII and VIII, separately concluding that Petitioner fails to demonstrate "cause" or "prejudice" to excuse his default. Petitioner objects to these latter findings, arguing that he overcame his default on both claims based on the merits of the claims themselves.

Having conducted a de novo review of the objected-to portions of Claims VII and VIII, this Court adopts the analysis and recommendations in the R&R, with the following additional

---

[25] Napue v. Illinois, 360 U.S. 264 (1959).

[26] Brady v. Maryland, 373 U.S. 83 (1963).

findings. First, as to the Napue claim asserting that the prosecution knowingly presented perjurious testimony, Petitioner fails to demonstrate "cause" for not raising this claim at trial or on direct appeal as he fails to demonstrate that an "objective factor external to the defense" (such as when "the factual or legal basis for a claim was not reasonably available to counsel," or when "interference by officials made compliance impracticable") impeded Lawlor from timely raising such a claim. Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). Petitioner does not rely on ineffective assistance of counsel as a means to excuse the procedural default of his Napue claim, instead purporting to rely on the merits of the Napue claim itself. However, in contrast to a claim under Brady, where proving the elements of the claim necessarily demonstrates that an external impediment (prosecutorial suppression) prevented the claim from being raised at an earlier time, a meritorious Napue false testimony claim does not require proof of prosecutorial suppression or any other factor that constitutes an external impediment, so a petitioner would still have to demonstrate an external impediment to show cause excusing his default. Cf. Swisher v. True, 325 F.3d 225, 230-31 (4th Cir. 2003) (concluding that "no act by the Commonwealth impeded [the petitioner's] ability to raise the [Napue] claim he now raises at trial or on appeal, and

52

he cannot demonstrate cause for his procedural default on this basis"). Accordingly, even assuming, that Lawlor has proven that the prosecution knowingly presented false testimony, his legal contention that such proof also acts to excuse his procedural default is flawed. Rather, because Lawlor fails to demonstrate an external impediment to raising his Napue claim with the trial Court or on direct appeal, such claim remains defaulted irrespective of the underlying merit of such claim.

Second, as to both the Napue claim and the Brady claim, consistent with the findings of the Supreme Court of Virginia in its Strickland prejudice analysis on a related claim that Lawlor did not reassert in this Court, Petitioner cannot establish the necessary "prejudice" to overcome his default. Lawlor, 288 Va. at 226-28, 764 S.E.2d at 271-72. Specifically, as discussed in the R&R's analysis of the Napue claim, R&R 52-53, the evidence/testimony at issue as to both the Napue claim and the Brady claim is not "material" because consideration of the trial record reveals the absence of a reasonable probability of a different outcome had Tuller been barred from testifying as an expert, or permitted to testify as an expert after his background qualifications were further impeached.[27]   Although

---

[27] Tuller's expertise was already impeached by defense counsel's effective voir dire of Tuller, as such questioning established: (1) Tuller does not have a college degree in a medical field and he is not a scientist (his undergraduate degree is in geology); (2) there is "no certification

Petitioner contends that both the state court and the Magistrate Judge "failed to analyze the prosecution's significant reliance on Tuller's testimony to establish" premeditation, abduction, and rape, ECF No. 53, at 21, a de novo analysis of such issue reveals that Tuller's fact testimony was far more essential to such issues than his admitted "expert" testimony.[28] Critically, even assuming that Tuller's expert "opinions" were excluded, he still would have been permitted to testify as a fact witness describing, in detail, the locations and physical descriptions of where blood was found, how much blood was found at each location, and where objects with blood on them were found in the victim's apartment. Such fact testimony was further supported by both admitted photographs of the murder scene and the

---

program" to become a blood spatter analyst; (3) there is "no licensing requirement"; (4) the state "doesn't require . . . any certificates"; and (5) there is "no curriculum required by either the State or the United States," nor is there a "universal standard" of necessary coursework to become a blood spatter analysis expert. JA 9568-70.

[28] The Court rejects Lawlor's contention that Tuller's expert testimony was material to proving premeditation, rape, or abduction as: (1) premeditation was proven in a variety of ways, including through Tuller's fact testimony, with his expert opinions of minimal import to this multi-faceted evidence, cf. JA 10542-48; (2) Tuller's expert testimony was not linked to "rape" in Lawlor's state habeas petition, and thus, such argument is not only not properly before this Court, but the Supreme Court of Virginia cannot be faulted for failing to analyze an issue that was not before it—moreover, the capital offense at issue only required proof of attempted rape, and there was overwhelming evidence of attempted rape wholly independent of Tuller's expert testimony; and (3) there was overwhelming physical evidence of abduction separate and apart from Tuller's expert testimony, based on both fact testimony that supported the inference that the victim was moved, and fact evidence demonstrating that Lawlor used force to physically detain the victim (an alternative means to prove abduction) even if Lawlor did not move her from the couch to the floor.

54

testimony of Dr. DiAngelo, a medical examiner. JA 9731-34. A review of the portions of the transcript cited by Petitioner in support of this claim, as well as a review of those transcript portions Lawlor cites in the § 2254 petition itself, reveals that Petitioner's arguments: (1) do not effectively differentiate between Tuller's "fact" testimony and "expert" testimony; and (2) rely on multiple arguments made by the prosecution outside the presence of the jury.[29]

In short, the legal standard for establishing either a Napue claim or a Brady claim includes a materiality requirement because the ultimate concern is whether the defendant received "a fair trial, understood as a trial resulting in a verdict worthy of confidence." Walker v. Kelly, 589 F.3d 127, 142 (4th Cir. 2009) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Here, because neither Claim VII or VIII satisfies the requisite materiality requirement, and for the additional reasons stated

---

[29] See JA 10032-33 (prosecution citing fact evidence from Tuller and merely referencing "blood spatter" in an argument to the judge outside the presence of the jury); JA 10047 (prosecution citing both fact and opinion evidence from Tuller in an argument to the judge outside the presence of the jury); JA 10095-96 (prosecution argument citing opinion testimony of "blood transfer," as well as fact evidence, in an argument to the judge outside the presence of the jury); JA 10532-33 (reflecting the prosecution's focus during its guilt-phase closing argument on the facts documenting the location and quantity of blood more so than Tuller's expert opinions); JA 12817-18 (prosecution penalty-phase closing argument that does not focus on any blood spatter expert opinion). With respect to those arguments made to the judge, the trial court's denial of Petitioner's motion to strike certain murder charges reveals that the denial of such motions was not a close call, and in explaining his ruling, the judge relied primarily on the facts detailing the physical evidence discovered at the scene, including the location and quantity of blood found on various items in various locations.

in the R&R, Claim VII and Claim VIII are dismissed as defaulted
and as lacking in merit.

## 8. Claim IX

Petitioner's ninth claim asserts that Virginia's sentencing
scheme is unconstitutional because it requires a capital
defendant to forfeit his right to have a jury determine
statutory aggravating factors if he exercises his right to plead
guilty. Additionally, Petitioner asserts that defense counsel
was constitutionally deficient for failing to challenge the
constitutionality of Virginia's sentencing scheme. The Supreme
Court of Virginia concluded that Petitioner's direct claim was
defaulted and that Petitioner failed to overcome such default by
demonstrating Strickland prejudice. The Magistrate Judge held
that the Supreme Court of Virginia's finding of default was
supported by an adequate state law ground, and that Lawlor did
not overcome his default because the state court's Strickland
prejudice analysis was not unreasonable. The Magistrate Judge
alternatively found that Petitioner failed to satisfy
Strickland's performance prong. After performing a de novo
review of objected-to issues, this Court largely adopts the
analysis in the R&R, including the finding that Petitioner's
direct claim is defaulted under Virginia law, the finding that
the Supreme Court of Virginia did not unreasonably apply
Strickland's prejudice prong, and the finding that an

56

independent analysis of Strickland's performance prong reveals that Petitioner fails to demonstrate constitutionally deficient performance.[30]

Beginning with trial counsel's performance, in light of the drugs and alcohol Lawlor used on the night of the murder, Petitioner had a viable defense to capital murder (lack of premeditation), and thus a clear strategic reason to proceed to trial and pursue a guilt phase jury verdict to a lesser degree of murder. At trial, knowing the strength of the evidence against Lawlor, defense counsel wisely conceded, from the first day of trial, that Lawlor killed the victim, thus securing the ability to argue Petitioner's acceptance of responsibility while retaining both the right to a jury determination during the penalty phase and the opportunity to secure a guilty verdict to a non-capital offense that would eliminate the possibility of a death sentence.

To further underscore the reasonableness of such strategic approach, it is important not to conflate "acceptance of responsibility" with "remorse" as they are different concepts. A person may accept responsibility for a crime when the evidence

---

[30] This Court's analysis does not turn on Powell v. Com., 267 Va. 107, 590 S.E.2d 537 (2004) or Jackson v. Com., 267 Va. 178, 590 S.E.2d 520 (2004), because, although these cases address the potential impact of Ring v. Arizona, 536 U.S. 584 (2002) on the constitutionality of Virginia's capital sentencing scheme, they do not squarely address the same constitutional concerns raised in this case.

is overwhelming, but still lack remorse for the crime itself. Assuming that Petitioner pled guilty to capital murder and was permitted to proceed to the penalty phase before a jury, Lawlor would have been in largely the same place regarding acceptance of responsibility and likely the precise same place regarding remorse. That is, defense counsel would have had the ability to point the jury to Lawlor's entry of a guilty plea, but beyond the occurrence of the plea itself, counsel could only prove "acceptance" and "remorse" to the extent that there was in fact further admissible evidence of acceptance/remorse. Lawlor fails to demonstrate in his habeas filings what viable evidence he possessed of acceptance, let alone remorse, that could have been introduced post-plea but that was precluded from being introduced following a trial where guilt for the murder was accepted during opening statements.[31] In sum, because the record suggests that pleading guilty to a capital charge would have

---

[31] In addition to the above, a review of the record further suggests that defense counsel's decision not to focus on "remorse" during Petitioner's penalty phase trial was not inextricably linked to Petitioner's decision to proceed to trial on the guilt phase, but rather, was likely a strategic outgrowth of the fact that "immediately after the murder Lawlor insisted he had no knowledge of the crimes and attempted to cast suspicion on his neighbor, and that after his DNA was discovered on the victim, Lawlor insisted he was being framed." Lawlor, 288 Va. at 229, 764 S.E.2d at 272; see JA 4675-76 (reflecting the acknowledgment in Petitioner's sentencing memorandum to the judge that "[i]t is true that in the near aftermath of the murder Lawlor did not take responsibility for his actions and express remorse in conversations with the police, his co-worker, and his pastor" and he instead "exhibited the human frailty often see[n] in people who commit crimes . . . either because he was trying to get away with something or because he was too ashamed to admit what he had done").

offered only a minimal added benefit with respect to acceptance, and no apparent benefit with respect to remorse, and would have forfeited the opportunity to secure a conviction to a non-capital charge, Petitioner fails to demonstrate through his hindsight arguments that counsel performed deficiently.[32]

---

[32] Even if it is assumed that Lawlor had a motivating reason to challenge the constitutionality of Virginia's sentencing scheme, there are substantial legal questions as to whether "a reasonably competent attorney would have believed that the Apprendi/Ring cases established that a defendant who pleads guilty to a capital offense and waives his or her right to a jury trial nevertheless retains a right to a jury determination of aggravating factors." Lewis v. Wheeler, 609 F.3d 291, 309 (4th Cir. 2010). As explained in Lewis, "the Ring decision did not clearly establish or even necessarily forecast that a capital defendant who pleads guilty and waives his right to a jury trial can insist upon a jury trial on aggravating factors." Id. at 310. Although the timing of the Lewis case resulted in the Fourth Circuit expressing "no opinion as to what effect, if any, Blakely [v. Washington, 542 U.S. 296 (2004)] has upon" this issue, Lewis, 609 F3d. at 310 n.6, substantial questions remain as to whether Blakely forestalled the analysis in Lewis. Notably, Blakely indicates that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely, 542 U.S. at 310. Such case, therefore, does not appear to squarely address whether it is constitutional for a state to, by statute, essentially require a defendant to consent to judicial factfinding if he or she elects to plead guilty to the equivalent of "non-aggravated" capital murder. Cf. Gray v. Pearson, No. 1:11cv630, 2012 WL 1481506, at *14-*15 (E.D. Va. Apr. 27, 2012), vacated on other grounds, 526 F. App'x 331 (4th Cir. 2013) ("Blakely did not so clearly settle the issue [discussed in Lewis] such that it was objectively unreasonable [for counsel] not to object to the Virginia sentencing regime."); Nunley v. Bowersox, 784 F.3d 468, 472 (8th Cir. 2015), cert. denied, 136 S. Ct. 23 (2015) (concluding that the Missouri Supreme Court did not unreasonably apply clearly established federal law by rejecting a challenge to a Missouri statute that prevents defendants who plead guilty to a homicide offense from having a jury trial on the issue of punishment absent agreement by the state); Mullens v. State, 197 So. 3d 16, 38-39 (Fla. 2016) (noting that courts in multiple states where "defendants who pleaded guilty to capital offenses automatically proceeded to judicial sentencing" have held that "Ring did not invalidate their guilty plea and associated waiver of jury factfinding" because the defendants knew when they pled guilty that they "fully forfeited their right to a jury trial").

59

Turning to prejudice, even assuming both that defense counsel should have challenged Virginia's sentencing scheme and that such a challenge would have been successful, for the reasons previously stated herein, and for the reasons discussed in the R&R, which are adopted, the Supreme Court of Virginia's prejudice analysis did not amount to an unreasonable application of <u>Strickland</u> in light of the fact that Petitioner's decision to proceed to trial had <u>minimal impact</u> on his ability to argue acceptance and no apparent impact on his ability to argue remorse.[33] Additionally, as to Petitioner's assertion that the Supreme Court of Virginia's prejudice analysis applies the wrong standard, this Court rejects such assertion notwithstanding the arguably less than precise language to which Petitioner has directed this Court. Notably, although the state habeas opinion first indicates that Lawlor fails to demonstrate that "the jury would have reached a different outcome," the very next sentence

---

[33] In light of the strategic reasons to proceed to trial in this case, the Court also questions whether Lawlor can credibly assert, in hindsight, a reasonable likelihood that he would have opted to plead guilty if counsel had informed him of the <u>potential</u> to establish that Virginia's sentencing scheme was unconstitutional. A review of the record reveals that after the jury found the statutory aggravating factors and determined that the appropriate sentence was death, defense counsel argued both acceptance and remorse to the judge during the subsequent sentencing proceedings, noting that Petitioner "wanted to plead guilty so badly that he signed the proposed plea agreement that we offered to the Commonwealth." JA 13100. A review of the Joint Appendix, however, reveals that although Lawlor attempted to plead guilty to "capital murder," the plea agreement he proposed provided that Lawlor would be sentenced to "life in prison without the possibility of parole" for both counts of capital murder. This Court is unaware of any record evidence suggesting that Lawlor would have been willing to forgo his right to a jury finding in the guilt phase <u>absent the promise</u> of a favorable outcome in the sentencing phase.

concludes that Petitioner "failed to demonstrate that there is a reasonable probability that . . . the result of the proceeding would have been different." Lawlor, 288 Va. at 229, 764 S.E.2d at 272-73 (emphasis added). Alternatively, even if this Court assumes that the incorrect standard was applied by the Supreme Court of Virginia, an application of the correct "reasonable probability" standard giving no deference to the state court yields the same result for the reasons stated by the Supreme Court of Virginia, by the Magistrate Judge, and in the above discussion. The instant claim is therefore dismissed.

### 9. Claim X

Petitioner's tenth claim asserts that trial counsel rendered ineffective assistance by failing to present available psychological testimony from defense expert Dr. James Hopper during the penalty phase of Petitioner's trial. The Supreme Court of Virginia concluded that Petitioner failed to satisfy either prong of the Strickland test as to this claim, and the R&R found that such analysis was not unreasonable. Petitioner objects to the Magistrate Judge's consideration of "hypothetical strategic reasons" when analyzing counsel's performance, objects to the R&R's characterization of the facts, and objects to the finding of a lack of prejudice, ultimately arguing that, at a minimum, an evidentiary hearing is warranted on this issue.

Having reviewed the objected-to issues de novo, this Court agrees with and adopts the R&R's analysis and conclusion that Petitioner fails to demonstrate that the Supreme Court of Virginia unreasonably applied either prong of the Strickland standard. In further support of the analysis in the R&R, the Court makes the following additional findings.

First, as argued by Respondent in the motion to dismiss Lawlor's state habeas petition:

> Lawlor's trial counsel had reasonable, strategic reasons not to call Dr. Hop[p]er to testify. After Dr. Hopper evaluated Lawlor for sentencing and mitigation purposes, the prosecution obtained their own evaluation by Leigh Hagan, Ph.D., which was in turn disclosed to Lawlor. Resp. Exh. B at ¶ 15, JA 2728. Dr. Hagan concluded:
>
> . . .
> • "Mr. Lawlor has thoroughly demonstrated difficulty related to women." Id. at p. 15
> • "Unfortunately, as he learned from his relationship with his mother, if the female challenged him, held him accountable or did not reciprocate with his advances, he became quite angry." Id. at p. 16.
> • "When Mr. Lawlor experienced rejection, he often responded with sudden, unpredictable and serious violence." Id.

Jan. 15, 2014 Mo. to Dismiss, at 64-65 (quoting Exh. B).[34] As further argued by Respondent, defense counsel was forced to "weigh the value of their own expert's testimony against the significant risk posed by Dr. Hagan," and the decision not to

---

[34] These bullet points are merely an excerpt from Dr. Hagan's report, and a review of the report itself reveals other examples of potential testimony that would have been harmful to Petitioner's mitigation case.

call Dr. Hopper successfully kept the jury from hearing from Dr. Hagan. Id. at 65. While, in hindsight, after an unfavorable result, it is easy to attack defense counsel's decision not to call a potential defense witness, the Strickland standard requires far more. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation marks and citation omitted); United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (explaining that the difficulty of overcoming the general presumption that counsel's conduct "might be considered sound trial strategy" is "even greater" when the alleged omission involves the failure to call a defense witness, as such decision is a strategic one "demanding the assessment and balancing of perceived benefits against perceived risks," thus entitling counsel to "enormous deference") (quotation marks and citations omitted). Guarding against equating "unreasonableness under Strickland with unreasonableness under § 2254(d)," this Court easily concludes that the Supreme Court of Virginia presented a "reasonable argument" in support of its finding that defense counsel performed within constitutional requirements. Richter, 562 U.S. at 105. As explained by the Fourth Circuit:

> Trial counsel is too frequently placed in a no-win situation with respect to possible mitigating evidence at the sentencing phase of a capital case. The failure to put on such evidence, or the presentation of evidence which then backfires, may equally expose counsel to collateral charges of ineffectiveness. The best course for a federal habeas court is to credit plausible strategic judgments in the trial of a state case.

Bunch v. Thompson, 949 F.2d 1354, 1363-64 (4th Cir. 1991). Accordingly, Petitioner fails to demonstrate that the decision not to call Dr. Hopper as one of the nearly fifty witnesses called during the penalty phase was anything but a reasoned strategic choice.[35]

Second, Petitioner's reliance on post-conviction affidavits from Dr. Hopper, and some members of the defense team, fails to demonstrate that the Supreme Court of Virginia unreasonably applied Strickland's prejudice prong. In light of the gruesome nature of the crime, and the other aggravating evidence, as well

---

[35] Petitioner's objections to the R&R appear to suggest that defense counsel's decision not to call Dr. Hopper can only be categorized as strategic if counsel submits an affidavit asserting the same. While Petitioner is correct that it is improper to "manufacture excuses for counsel's decision that he plainly did not and could not have made," a reviewing court is not required to "confine [its] examination of the reasonableness of trial counsel's decision to only the literal wording of his explanation," but rather, the reasonableness of not calling a witness must be evaluated in the context of the circumstances at the time to determine whether the decision not to call the witness "'might be considered sound trial strategy.'" Terry, 366 F.3d at 317 (quoting Strickland, 466 U.S. at 689); see Bullock v. Carver, 297 F.3d 1036, 1047 (10th Cir. 2002) ("[T]he Strickland decision 'places upon the defendant the burden of showing that counsel's action or inaction was not based on a valid strategic choice.'" (quoting Wayne R. LaFave et al., Criminal Procedure § 11.10(c) at 715 (West 2d 1999)). As noted above, because the decision being evaluated involves counsel's decision not to call an available defense witness, the deference owed as to this issue is "enormous deference." Terry, 366 F.3d at 317.

as the scope of mitigating evidence already before the jury, the Supreme Court of Virginia's conclusion that Lawlor failed to demonstrate a degree of prejudice sufficient to undermine confidence in the outcome is reasonably defensible, and thus must withstand Petitioner's federal collateral challenge. In concluding that Dr. Hopper's testimony would have been largely cumulative, the Supreme Court of Virginia did not rely solely on facts that were introduced regarding Lawlor's difficult upbringing, but also cited to testimony from defense expert Dr. Morton, defense expert Mary Fisher (a licensed therapist and psychiatric nurse practitioner who treated and diagnosed Lawlor with substance abuse dependencies, PTSD, and either major depressive episodes or bipolar disorder), and the clinical coordinator of an alcohol and drug program in which Lawlor participated. See, e.g., JA 11971, 11979-82, 11985, 12374-75, 12377-12390, 12600-02, 12616-19. Although this Court does not question Petitioner's contention that Dr. Hopper would have presented testimony helpful to the defense, Dr. Hopper not only would have been subject to cross-examination, but Dr. Hagan would almost certainly have been called by the prosecution, rendering it pure speculation to assert that calling Dr. Hopper as a witness would have not only been a "net win" for the defense, but would have been a "win" to such a substantial degree that confidence in the jury's sentence is undermined.

As to Petitioner's argument in his federal habeas petition that Dr. Hagan's potential rebuttal testimony was subject to being undercut by Dr. Hopper's testimony, it does not appear that such argument was presented in the state habeas petition or the state rebuttal brief, and thus it was not likely considered by the Supreme Court of Virginia.[36]  ECF No. 29, at 55-56. However, even assuming that this Court may permissibly consider such recharacterized claim at this time, Dr. Hopper's somewhat vague post-trial assertion that some of Dr. Hagan's opinions were subject to being undermined by effective cross-examination is insufficient to undercut the reasonableness of the Supreme Court of Virginia's prejudice analysis in light of all of the sentencing phase evidence that was presented, both aggravating and mitigating, to include the gruesome nature of the crime. See Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.") (emphasis added) (citations omitted).

---

[36] Petitioner did argue to the state habeas court that Dr. Hagan's testimony would not have been particularly damaging, but does not appear to argue that defense counsel was deficient for failing to provide Dr. Hopper with Dr. Hagan's report at an earlier stage in the proceedings, or failing to explicitly direct Dr. Hopper to "identify errors" in Dr. Hagan's clinical judgment; nor did Petitioner assert that Dr. Hopper would have undermined the analysis behind Dr. Hagan's conclusions because it was purportedly "replete with errors."

Petitioner also contends that the Supreme Court of Virginia's analysis was predicated on an incorrect factual finding regarding whether Dr. Hopper's opinions "conflicted" with the other evidence in mitigation. This Court adopts the R&R's characterization of such factual determination as only one small part of the Supreme Court of Virginia's analysis. However, even if this Court assumes that such finding was an "unreasonable factual finding": (1) such finding is limited to the performance prong of Strickland, and thus, does not undercut the reasonableness of the Supreme Court of Virginia's prejudice analysis; and (2) to the extent the performance prong analysis is properly characterized as being based on an unreasonable factual finding, this Court alternatively gives no deference to such analysis, performs its own independent and de novo review of counsel's performance, and for all the same reasons set forth above, independently concludes that Petitioner fails to demonstrate that counsel performed outside the wide range of reasonable professional assistance in light of the "enormous deference" owed to counsel's decision not to call a defense witness. See Austin v. Plumley, 565 F. App'x 175, 184-85 (4th Cir. 2014) (explaining that when "the State Supreme Court's decision was based on an unreasonable determination of the facts" the federal court considers the claim "under a purely de novo standard, owing no deference to the State Supreme Court's

decision"). For these reasons, Lawlor's tenth claim is dismissed.

## 10. Claim XI

Petitioner's eleventh claim asserts that the trial court unconstitutionally excluded the testimony of defense expert Dr. Mark Cunningham regarding Petitioner's risk of violence in prison. Petitioner's claim has two subparts: (a) such evidence was admissible to rebut the prosecution's evidence on the statutory aggravating factor of future dangerousness; and (b) such evidence was admissible as mitigation evidence.[37] The Supreme Court of Virginia addressed and rejected both subparts of this claim on direct appeal, appropriately recognizing the two discrete potential uses for the disputed evidence. Lawlor's § 2254 petition readdresses both subclaims, and the R&R includes a lengthy analysis of each, explaining why the Supreme Court of Virginia's decision was not unreasonable or contrary to clearly established federal law. Petitioner's objections challenge the Magistrate Judge's analysis on both subparts, asserting that the Supreme Court of Virginia made unreasonable factual

---

[37] While oversimplifying the issue, the crux of the dispute at trial was as follows: for subclaim (a), whether Dr. Cunningham had evaluated Lawlor's future risk of dangerousness to society as a whole (permissible) or had limited his evaluation to risk of dangerousness to prison society (deemed impermissible); and as to subclaim (b), whether Dr. Cunningham had evaluated Lawlor's character/personal traits and personal history (permissible) or had merely evaluated statistics based on factors that are unrelated, or largely unrelated, to Lawlor's character/personal traits (deemed impermissible).

68

determinations and unreasonably applied Supreme Court precedent. Having conducted a de novo review, this Court adopts the R&R's detailed analysis on this issue, with the following additional discussion.

First, as to subclaim (a), Petitioner's objections do not appear to assert that the Supreme Court of Virginia made unreasonable factual findings, but instead argues that the Magistrate Judge did not consider all of the relevant facts. ECF No. 53, at 31-32. However, the Magistrate Judge had no obligation to recount all of the facts or, as Petitioner suggests, to "acknowledge" questions asked by the jury subsequent in time to Dr. Cunningham's testimony when determining whether the trial court's limitation of such testimony was constitutionally permissible. Moreover, Petitioner fails to demonstrate that the Magistrate Judge improperly characterized Dr. Cunningham's testimony, because while a substantial portion of such testimony was plainly excluded by the trial judge, the witness did in fact present a portion of his opinion regarding future dangerousness. See JA 12448, 12453-54, 12460, 12484-94, 12496-504, 12542; see also 12516 (reflecting the trial judge's acknowledgement that, notwithstanding the numerous objections and court rulings, Dr. Cunningham had "given his opinion," which the judge characterized as "a very good opinion").

Second, as to the same subclaim, Petitioner's objection fails to specifically highlight faults in the legal analysis in the R&R, instead merely citing back to his earlier-in-time filings asserting that he had a right to present the disputed testimony regarding Lawlor's future dangerousness in the prison environment. A de novo review, however, only confirms the Magistrate Judge's finding that the Supreme Court of Virginia's interpretation of the definition of "society," as defined by Virginia statute, did not lead to an unreasonable application of clearly established Supreme Court precedent. To the contrary, Petitioner points to no Supreme Court case that clearly establishes that it is unconstitutional for a state to interpret a state created statutory aggravating factor of "future dangerousness" to focus only on the danger a defendant would pose in the future to society as a whole, rather than prison society. See Morva v. Com., 278 Va. 329, 349-50, 683 S.E.2d 553, 564-65 (2009) (explaining in detail that the question under Virginia law regarding future dangerousness focuses on the defendant's history and the circumstances of defendant's offense, and because the ultimate question is not whether a defendant "could commit criminal acts of violence in the future but whether he would," trial courts "should exclude evidence concerning the defendant's diminished opportunities to commit criminal acts of violence in the future due to the security

conditions in the prison") (citation omitted). Stated simply, Petitioner was not denied his constitutionally protected opportunity to rebut and explain the prosecution's evidence supporting a finding of future dangerousness (such as the vile nature of the murder, or details regarding Lawlor's past crimes) but rather, he was denied the opportunity to "recast" the relevant question to ask whether Lawlor, if at all times confined in a Virginia prison with its concomitant security conditions, would likely pose a future danger to prison society. Lawlor therefore fails to demonstrate that the Supreme Court of Virginia "unreasonably" applied federal law in denying such claim.

Third, as to Petitioner's subclaim (b), which asserts the unconstitutional exclusion of general mitigation evidence, the issue turns on the critical distinction between the impermissible exclusion of evidence regarding a defendant's past behavior in jail, which supports the claim that he "would not pose a danger if spared (but incarcerated)," Skipper v. South Carolina, 476 U.S. 1, 5 (1986), from what the Supreme Court of Virginia concluded was the permissible exclusion of evidence that seeks to demonstrate the absence of dangerousness to the prison community based on statistical models considering, among other factors, a defendant's age, education, and gang affiliation. As recently explained by the Fourth Circuit in a

published opinion, the holding in Skipper was "narrow" and limited to evidence regarding the defendant's past behavior while incarcerated; accordingly, "[a] defendant's constitutional right to present mitigating evidence related to his character, criminal history, and the circumstances of his offense does not upset a state court's broad discretion in determining the admissibility of other, nonindividualized evidence." Morva v. Zook, 821 F.3d 517, 526 (4th Cir. 2016), cert. denied, 137 S. Ct. 1068 (2017) (citation omitted). Here, the Supreme Court of Virginia concluded that "[m]erely extracting a set of objective attributes about the defendant and inserting them into a statistical model created by compiling comparable attributes from others, to attempt to predict the probability of the defendant's future behavior based on others' past behavior does not fulfill the requirement that evidence be 'peculiar to the defendant's character, history, and background' under Morva, 278 Va. at 350, 683 S.E. 2d at 565." Lawlor, 285 Va. at 251, 738 S.E. 2d at 884. Consistent with the Fourth Circuit's analysis of the federal habeas petition filed in Morva, the Supreme Court of Virginia's determination that "statistical evidence of similarly situated inmates" was inadmissible in Lawlor's case was not unreasonable under Supreme Court precedent. Morva v. Zook, 821 F.3d at 526.

This Court similarly rejects Petitioner's apparent factual challenge to the R&R and to the Supreme Court of Virginia's characterization of the categories of excluded evidence as not being based on Lawlor's personal character. While a reasonable argument can be made that certain factors, such as Lawlor's employment history or ongoing contact with his family, were evidence documenting Lawlor's personal character, because Dr. Cunningham sought to testify about these factors only to compare such facts to statistical models categorizing the behavior of other unrelated inmates, there is also a reasonable argument that such factors were merely statistical data points and not facts peculiar to Lawlor's character, as found by the Supreme Court of Virginia. Lawlor, 285 Va. at 251-54, 738 S.E. 2d at 883-85. As reasonable disagreement could occur on certain "characteristics" at issue, the Supreme Court of Virginia's findings were not an unreasonable determination of the facts, or controlling Supreme Court precedent.[38] For all of these reasons, Claim XI is dismissed.

## 11. Claim XII

Petitioner's twelfth claim asserts that the trial court erroneously and unconstitutionally: (a) precluded two probation officers, as well as a third individual, from providing hearsay

[38] Even if the state habeas court erred in its application of Morva, 278 Va. at 349, such claim of error is not cognizable on federal habeas review unless the error rose to the level of a federal constitutional violation.

testimony about Petitioner's history of sexual abuse; (b) required Petitioner to testify in order to admit mitigating evidence; and (c) excluded testimony about Petitioner's life and positive relationships with friends and family. The Supreme Court of Virginia rejected all of these claims on direct appeal, and the Magistrate Judge's R&R carefully analyzes each subpart of Petitioner's claim and recommends denying each subpart.

After performing a de novo review of the objected-to portions of Claim XII, this Court adopts each subpart of the Magistrate Judge's analysis. As to the first subpart, the Magistrate Judge correctly concluded that the Supreme Court of Virginia did not unreasonably apply Green v. Georgia, 442 U.S. 95 (1979), and associated precedent, to Lawlor's case as the facts in the record fail to demonstrate a sufficient indicia of reliability for the disputed hearsay evidence self-reported by Lawlor to probation officers and an individual performing a court-ordered alcohol and drug dependency assessment. In short, the Supreme Court of Virginia appropriately concluded, based on the guidance set forth in Buchanan v. Angelone, 103 F.3d 344 (4th Cir. 1996), that the facts of Lawlor's case do not fit within the "narrow exception recognized by Green" because, in this case, Virginia's hearsay rule was invoked to bar statements that "lack the inherent reliability of the statement excluded in Green." Id. at 349. Specifically, the Supreme Court of

Virginia noted Petitioner's failure to cite any authority for the proposition that statements made by a criminal defendant to a probation officer, or to a person performing a court-ordered drug assessment, "can be relied upon as truthful under the circumstances, rather than being self-serving or manipulative." Lawlor, 285 Va. at 242, 738 S.E.2d at 878-79. Similarly, that court engaged in a reasoned analysis describing the difference in reliability between a statement made to a physician "for the purpose of medical diagnosis or treatment" (the end-goal being to receive appropriate treatment, rendering honesty paramount) and statements made by an incarcerated, or soon to be incarcerated, individual to a probation officer or drug counselor (the end-goal often being to "minimize his time", which lacks the vital link to honesty). Petitioner's § 2254 motion and objections to the R&R fail to point to existing Supreme Court precedent that would render the Supreme Court of Virginia's application of Green unreasonable as Lawlor does not cite to any subsequent cases extending the holding of Green to evidence of a defendant's historical abuse (sexual or otherwise) self-reported to a probation officer or other individual performing an investigation or assessment associated with a criminal case. See Morva v. Zook, 821 F.3d at 524 (explaining that when the "precise contours" of right recognized by the Supreme Court remain unclear, state courts necessarily enjoy

"broad discretion" in adjudicating habeas claims and "when the Supreme Court has not yet confront[ed] the specific question presented by [a particular] case, the state court's decision [cannot] be contrary to any holding of the Supreme Court") (internal quotation marks and citations omitted) (alterations in original); White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (explaining that "even 'clear error' will not suffice" to establish an "unreasonable application" of Supreme Court precedent, which instead requires a ruling "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement") (quotation marks and citations omitted). The reasonableness of the Supreme Court of Virginia's analysis is further bolstered by the Fourth Circuit's conclusion in Buchanan that the narrow exception recognized in Green was recognized in a case where the excluded hearsay "strongly tended to show that the defendant was innocent," whereas the statements at issue in Lawlor's case, and in Buchanan, "were offered only for the purpose of providing additional support" for admitted mitigating evidence relevant to the defendant's emotional state. Buchanan, 103 F.3d at 349 (emphasis added); cf. Davis v. Branker, 305 F. App'x 926, 938 (4th Cir. 2009) (noting that while the Fourth Circuit "might have decided the question of reliability differently were [it] presented . . . ab initio,"

76

the North Carolina Supreme Court cannot be deemed "unreasonable"
for holding that the facially "self-serving" letters written by
the defendant to his mother while he was incarcerated did not
meet the reliability standard established in Green).

Alternatively, as discussed in detail in the R&R, the Court
concludes that even if the disputed evidence was improperly
excluded, the record demonstrates that such error was "harmless"
in light of the testimony that was introduced. While Petitioner
argues in his objections that the excluded testimony of sexual
abuse would have been more powerful than the sexual abuse
testimony that was admitted, in light of the record as a whole,
Petitioner fails to demonstrate that any error that occurred
rose to the level necessary to affect his substantial rights.
R&R 83-87.

As to the second and third subparts of Petitioner's claim,
this Court adopts the Magistrate Judge's analysis and
recommendation of dismissal. The Court notes that it appears
unlikely that a de novo review was even necessary on these
subclaims in light of Petitioner's broad and conclusory
objections to the Magistrate Judge's findings. Nevertheless,
the Court has performed a de novo review,[39] and adopts in full

_____

[39] As explained in the adopted R&R analysis, consistent with the ruling of
the Supreme Court of Virginia on direct appeal, Petitioner's claim
asserting that the trial court committed error by referencing Lawlor's
failure to testify is rejected because the disputed comments were made

the portions of the R&R addressing these claims as Petitioner fails to demonstrate that the Supreme Court of Virginia unreasonably applied Supreme Court precedent.

## 12. Claim XIII

Petitioner's thirteenth claim asserts that, during the penalty phase of the trial, defense counsel was ineffective by unreasonably "opening the door" to damaging testimony elicited by the prosecution from Lawlor's ex-fiancée (Ms. Godlove) during her redirect testimony. The Supreme Court of Virginia concluded that Petitioner failed to demonstrate "prejudice" because, in light of the damaging testimony adduced by the prosecution during Ms. Godlove's direct testimony, the additional testimony she provided during redirect did not have a reasonable probability of changing the outcome of the jury's sentencing determination. The Magistrate Judge concluded that the Supreme Court of Virginia's Strickland prejudice analysis was not unreasonable. Petitioner objects to such finding on the basis that it fails to recognize that while Ms. Godlove had testified on direct regarding her efforts to protect herself from

---

outside the presence of the jury. This Court similarly rejects Petitioner's footnote reference in his federal habeas petition to similar comments made by the prosecutor. The first cited comment was also made outside the presence of the jury, and while the second comment was made in the jury's presence, it was deemed defaulted by the Supreme Court of Virginia, Lawlor, 285 Va. at 246 n.23, 738 S.E.2d at 881 n.23, and Petitioner has neither overcome such default nor demonstrated that such lone comment, when considered in its context, rises to the level of a constitutional error for which habeas relief is warranted.

Petitioner, she did not testify about multiple prior instances of violence, or describe Lawlor's specific displays of aggression.

Having reviewed the objected-to findings de novo, this Court adopts the analysis and recommendation in the R&R. Although Petitioner disagrees with the findings of the Supreme Court of Virginia, and invites this Court to disagree with them as well, Petitioner's arguments fail to demonstrate that the state court's resolution of this claim, on the merits, involved an unreasonable application of federal law and/or an unreasonable determination of the facts. As repeatedly emphasized herein, this Court cannot accept Petitioner's invitation to disagree with the Supreme Court of Virginia, even if it was inclined to do so (which it is not), because this Court "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," Bell, 236 F.3d at 158 (citation omitted), nor may it do so when "the federal habeas court would have reached a different [factual] conclusion in the first instance," Wood, 558 U.S. at 301 (citation omitted). Rather, if reasonable minds could disagree as to the application of law or the factual findings in question, the state court decision must stand. Bell, 236 F.3d at 158; Wood, 558 U.S. at 301. Here, in light of

all of the evidence in the trial record, both aggravating and mitigating, to include not only the direct testimony of Ms. Godlove, but all other testimony relevant to Lawlor's future dangerousness, the Supreme Court of Virginia did not unreasonably conclude that the exclusion of Ms. Godlove's "redirect" testimony would not have had a reasonable probability of changing the outcome of the jury's sentencing determination.[40] Cf. Hedrick v. True, 443 F.3d 342, 349 (4th Cir. 2006) ("When a defendant asserts prejudice with respect to his sentence" the court must "'reweigh the evidence in aggravation against the totality of available mitigating evidence.'" (quoting Wiggins, 539 U.S. at 534)).

In addition to the above finding, which is alone sufficient to warrant denial of Petitioner's habeas claim, the Court separately finds that, as argued by Respondent, Petitioner fails to demonstrate a legal bar to the admissibility of the disputed testimony (Ms. Godlove's redirect testimony) but for defense

---

[40] To the extent that Petitioner's assertion of prejudice is related to the jury's finding of the aggravating factor of "future dangerousness," Petitioner's claim is insufficient to warrant relief because Lawlor was separately found to be "death eligible" based on the jury's independent finding regarding the statutory aggravating factor of vileness. To the extent that the prejudice Petitioner asserts is directed at the jury's balancing of mitigating and aggravating factors in order to determine that "death" was the appropriate sentence, the state court reasonably concluded that there is no Strickland prejudice because: (1) as discussed above, in light of the entirety of the aggravating and mitigating evidence, the disputed evidence is not of sufficient import such that its admission was reasonably likely to impact the outcome of the penalty phase; and (2) as discussed in more detail below, Ms. Godlove's redirect testimony was otherwise admissible.

counsel "opening the door" during cross-examination. As argued in support of Respondent's motion to dismiss, although Lawlor asserts that the questions asked on redirect were only permissible because the door had been opened by defense counsel, Petitioner "fails to articulate any bar to such questions" in light of the fact that "the prosecutors could have recalled Godlove to rebut Lawlor's mitigation evidence" during its rebuttal case.[41]    ECF No. 29, at 72.    Accordingly, notwithstanding defense counsel's side-bar argument that allowing the re-direct would create a "constitutionally . . . unreliable sentencing hearing" and/or his subsequent arguments seeking a mistrial, because the challenged testimony could have

---

[41] Lawlor's § 2254 Petition also does not cite to precedent supporting the assertion that this evidence was necessarily barred on redirect even if the door had not been "opened."    Although, typically, the scope of redirect is constrained by the scope of cross, a trial judge is afforded latitude in this arena as the judge may determine the "mode and order of interrogating witnesses . . . so as to (1) facilitate the ascertainment of the truth, [and/or] (2) avoid needless consumption of time . . . ."  Va. Sup. Ct. R. 2:611(a) (emphasis added).    While the Virginia Rules of Evidence had not been adopted at the time of Lawlor's trial, such rules were "adopted to implement established principles under the common law and not to change any established case law rendered prior to the adoption of the Rules."  Va. Sup. Ct. R. 2:102 (emphasis added).  Accordingly, if the door had not been opened, and the prosecution sought to pursue the same line of questioning on redirect, the trial judge would likely have been acting within his discretion to allow such questioning at that time rather than requiring the prosecution to wait until its rebuttal case to introduce precisely the same admissible testimony.  Cf. 3 Crim. Prac. Manual § 87:2 (noting that "under Fed. R. Evid. 611(a) and similar state rules the judge has broad discretion over the extent and scope of redirect," and that although a "question that one forgot to ask during the original examination is not proper fodder for redirect . . . the judge, under broad discretionary power to vary the normal order of proof, may permit the party to bring out a matter that is relevant and, through oversight, the lawyer failed to elicit"); 81 Am. Jur. 2d Witnesses § 684 ("The scope of a redirect examination is in the discretion of the trial court").

been presented by the prosecution during its rebuttal case, Petitioner fails to demonstrate Strickland prejudice based on its admission at an earlier time due to defense counsel's strategic efforts to link Lawlor's prior anger issues with his alcohol and/or drug abuse.[42]  Petitioner's thirteenth claim is therefore dismissed.

### 13. Claim XIV

Petitioner's fourteenth claim asserts that the prosecution unconstitutionally misled the sentencing jury by wrongly asserting during the penalty phase that Petitioner raped the victim as contrasted with asserting that Lawlor had attempted to rape the victim.  Because such claim is procedurally defaulted, Petitioner asserts that defense counsel was ineffective for unreasonably failing to object to the prosecutor's penalty phase statements.  The Supreme Court of Virginia concluded that Petitioner's direct claim was procedurally defaulted and that Petitioner failed to overcome such default by demonstrating

---

[42] In light of the fact that the prosecution could have introduced such evidence in its rebuttal case, even assuming that defense counsel performed a less than complete pre-trial investigation into Ms. Godlove's prior statements, counsel was also not constitutionally deficient for pursuing the defense strategy of trying to undercut the strength of Ms. Godlove's direct testimony through cross-examination seeking to elicit favorable testimony linking Lawlor's prior misconduct to his alcohol or drug abuse.   Although, in retrospect, counsel arguably wandered into somewhat dangerous waters through such questioning, to the extent that the negative rebuttal testimony was already subject to being introduced by the prosecution, counsel's decision to ask the questions that purportedly "opened the door" does not rise to the level of constitutionally deficient performance.

Strickland prejudice. The Magistrate Judge concluded that the Supreme Court of Virginia's finding of procedural default and application of Strickland's prejudice prong were both reasonable and consistent with clearly established federal law. The Magistrate Judge independently concluded that Strickland's performance prong was not satisfied. Petitioner did not specifically object to the procedural default finding, but instead asserts that the Magistrate Judge erred as to both prongs of the Strickland analysis.

This Court adopts the procedural default finding, and having considered the objected-to portions of the R&R de novo, this Court further adopts and approves the Strickland analysis in the R&R. First, while Petitioner advances a colorable objection that defense counsel could have made during the penalty phase, he fails to establish that counsel's decision not to make such objection was constitutionally deficient in light of the fact that the same jurors that had found Petitioner guilty of capital murder in the course of either a rape, or an attempted rape, were sitting on the penalty-phase jury. Considering this matter from defense counsel's perspective at the time, the likelihood that a juror who had previously concluded that Petitioner was guilty of only capital murder in the course of an attempted rape would have been "confused" into believing that an actual rape occurred merely by the phrasing of

the prosecutor's questions to witnesses, or arguments during closing, is both remote and speculative.[43] This Court therefore adopts the Magistrate Judge's independent analysis of Strickland's performance prong. Cf. Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996) (addressing defense counsel's failure to object to the prosecution's references to "notorious and grisly crimes not at issue," and explaining that even though such comments "risked confusing the jury and arousing its prejudices . . . [a]s other courts have noted, refraining from objecting to avoid irritating the jury is a standard trial tactic," particularly during the penalty phase of a death case as "counsel may very well conclude that their best approach is to avoid appearing contentious").

Second, the Court adopts and approves the portion of the R&R concluding that the Supreme Court of Virginia did not make unreasonable factual findings, nor reach a conclusion that results from an unreasonable application of Strickland's prejudice prong.[44] In short, the burden remains on Petitioner to

---

[43] To the extent Lawlor's assertion of error is grounded in the suggestion that the references to "rape" were far more egregious than attempted rape, it must be reiterated that, in this case, even if Petitioner did not rape the victim, the physical evidence demonstrated that the "lessor" offense involved beating the victim to death by striking her 47 times with one or more blunt objects, while she fought to defend herself, during the course of an attempted rape that involved Petitioner removing the victim's underwear, pushing up her bra, possibly touching or licking her breasts, and ejaculating on the victim's body.

[44] This Court acknowledges that the manner in which the Supreme Court of

84

demonstrate a "reasonable probability" of a different outcome but for the admission of the now-challenged statements, and Petitioner's hindsight speculation that certain jurors who had decided guilt on an "attempted rape" finding "could have" been confused by the prosecutor's penalty phase statements falls far short of the necessary showing. Moreover, even if it is assumed that a juror was "confused" by the prosecutor's comments, Petitioner fails to carry his ultimate burden to establish that such confusion had a reasonable probability of changing the outcome of the penalty phase. For these reasons, the instant claim is dismissed.

## 14. Claim XV

Petitioner's fifteenth claim asserts that: (a) the Virginia "vileness" statutory aggravating factor was unconstitutionally found by the jury without a unanimous agreement as to which distinct vileness element was present in this case; and (b) the vileness aggravating factor is unconstitutionally vague. The

Virginia phrased the Strickland prejudice test, in its final sentence of the analysis of state claim XIII(B) and XIII(C), provides an opening for Petitioner to attack the finding because the opinion indicates that Petitioner failed to demonstrate that the result of the proceeding "would have been different." Lawlor, 288 Va. at 247, 764 S.E.2d at 284. However, the Supreme Court of Virginia's opinion had previously stated the correct "reasonable probability" Strickland prejudice standard more than ten times, and therefore, the challenged phrasing is insufficient to demonstrate an unreasonable application. Moreover, even if the Supreme Court of Virginia applied an incorrect standard, and this Court gave such ruling no deference, this Court's independent application of the correct "reasonable probability" standard unquestionably yields the same conclusion—Petitioner fails to carry his burden to demonstrate Strickland prejudice.

85

Supreme Court of Virginia concluded on direct appeal that controlling Virginia precedent foreclosed both claims. The Magistrate Judge thereafter found that the Supreme Court of Virginia's analysis did not amount to an unreasonable application of Supreme Court precedent. Petitioner objects to such finding, asserting: (1) that the analysis in the R&R as to subclaim (a) is in conflict with Ring v. Arizona; and (2) the analysis in the R&R as to subclaim (b) relies on pre-Ring case law that failed to analyze the constitutional principles established in Ring and subsequent Supreme Court cases. Having conducted a de novo review of this claim, the Court hereby adopts the analysis contained in the R&R in full, with the following additional analysis.

Petitioner's objection to the R&R as to subclaim (a) relies on the following controlling constitutional rule: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." Ring, 536 U.S. at 602. Lawlor's contention that such rule was violated in this case, however, overlooks the very first word of such legal standard. Contrary to Petitioner's habeas arguments, Virginia law does not make an increase in a defendant's authorized punishment from life to death contingent on the finding of "depravity of mind," "aggravated battery," or

"torture," but instead makes it contingent on a jury's unanimous finding of the "aggravating factor of vileness, which requires the defendant's actions be 'outrageously or wantonly vile, horrible or inhuman.'" Jackson v. Com., 266 Va. 423, 434-35, 587 S.E.2d 532, 541 (2003) (quoting Va. Code § 19.2-264.2). Stated differently, pursuant to Virginia law, "[d]epravity of mind, aggravated battery, and torture are not discrete elements of vileness that would require separate proof but rather are 'several possible sets of underlying facts [that] make up [the] particular element'" of vileness. Id. (first alteration added) (quoting Richardson v. United States, 526 U.S. 813, 817 (1999)); see Richardson, 526 U.S. at 817 (explaining that while a federal jury must unanimously find the elements of a criminal offense (such as a "threat of force"), such jury need not always agree on which "underlying brute facts" make up such element, thus permitting juror disagreement as to whether the "means" of making the threat was through using a knife or using a gun); see also Johnson v. Fankell, 520 U.S. 911, 916 (1997) (noting that "fundamental to our system of federalism" is the fact that "the interpretation of [a state] statute by [that state's] Supreme Court would be binding on federal courts"). As relied on by the Supreme Court of Virginia in denying Lawlor's state habeas claim, the Supreme Court of Virginia recently concluded that its prior holding in Jackson "is unaffected by Ring." Prieto v.

Com., 283 Va. 149, 180, 721 S.E.2d 484, 503 (2012). Petitioner's § 2254 motion and associated filings, including his objections to the R&R, fail to demonstrate that Virginia's own interpretation of Virginia law defining the statutory finding that must be made unanimously by the jury amounts to an unreasonable application of clearly established Supreme Court precedent.

Petitioner's objection as to subclaim (b) advances a conclusory one-sentence objection asserting that the Magistrate Judge erred by relying on Fourth Circuit and Virginia precedent upholding the constitutionality of Virginia's vileness factor as against a vagueness challenge because such case law was decided prior to Ring and failed to analyze the constitutional principles set forth in Ring. Petitioner, however, fails to explain how the holding in Ring has any relevance to Petitioner's conceptually distinct constitutional challenge grounded in vagueness. Even assuming that Petitioner's conclusory objection warrants de novo review, such review reveals that the Supreme Court of Virginia did not unreasonably apply clearly established Supreme Court precedent in concluding that Virginia's vileness aggravating factor is not

unconstitutionally vague.[45] For these reasons, Petitioner's
fifteenth claim is dismissed.

## 15. Claim XVI

Petitioner's sixteenth claim asserts that the penalty-phase
jury instructions unconstitutionally biased jurors towards a
sentence of death and that appellate counsel was ineffective for
failing to preserve this claim. Petitioner does not object to
the analysis and/or recommendation set forth in the R&R on this
issue. Having conducted a review for clear error, this Court
adopts and approves the analysis and conclusion set forth in the
R&R as to Claim XVI, and such claim is dismissed.

## 16. Claim XVII

Petitioner's seventeenth claim asserts that the trial judge
violated Lawlor's constitutional rights when he considered
Petitioner's pre-trial silence and defense strategy at trial as
part of the judge's determination not to set aside Lawlor's
death sentence. To clarify, Petitioner's claim is not that the
sentencing jury received improper instructions of law or that
the jury improperly considered Lawlor's silence/defense strategy
when imposing a sentence of death; rather, Petitioner's claim is
that the judge's discretionary decision not to set aside the

---

[45] As noted previously, the jury also returned a unanimous finding against
Lawlor on the statutory aggravating factor of future dangerousness, and
thus, the sentence of death would stand even if the vileness factor
suffered from a constitutional infirmity.

89

jury's sentence of death relied on an unconstitutional factor. On direct appeal, the Supreme Court of Virginia rejected Petitioner's "as applied" constitutional challenge to the judge's sentencing determination, holding that: (1) because the judge's decision on whether to set aside a sentence of death is discretionary under Virginia law, it is reviewed only for an abuse of discretion; and (2) when determining whether Lawlor demonstrated remorse or acceptance of responsibility the sentencing judge improperly relied on Lawlor's prior silence; however, such error did not constitute an "abuse of discretion" because the judge did not give "significant weight" to this constitutionally improper factor.    Lawlor's federal habeas petition asserts that the state court ruling was contrary to Supreme Court precedent because Estelle v. Smith, 451 U.S. 454 (1981) and Mitchell v. United States, 526 U.S. 314 (1999) "clearly established . . . [that] the Fifth Amendment applies during sentencing proceedings."    ECF No. 20, at 87.

The R&R concluded that the Supreme Court of Virginia's ruling was not contrary to the Supreme Court cases on which Petitioner relied in his federal habeas petition, and that the Supreme Court of Virginia's weighing of the trial judge's error was not unreasonable.    Petitioner objects to both findings, with little additional explanation beyond reciting Mitchell, Estelle, and United States v. Caro, 597 F.3d 608, 628-30 (4th Cir. 2010).

Having considered the objected-to findings de novo, this Court

adopts the analysis and recommendation in the R&R, finding that

Petitioner fails to establish either an unreasonable

determination of the facts or an unreasonable application of

clearly established Supreme Court precedent.

First, as to Petitioner's objection contending that the

state court violated Mitchell and Estelle when it noted that it

is lawful to consider a defendant's present "silence" at a

sentencing hearing (as contrasted with prior silence associated

with a claim of innocence or decision not to testify at trial),

Petitioner's assertion is belied by the holding in Mitchell,

which was recently reiterated by the Supreme Court in White v.

Woodall, where the Court explained:

> We have, it is true, held [in Estelle and Mitchell]
> that the privilege against self-incrimination applies
> to the penalty phase. But it is not uncommon for a
> constitutional rule to apply somewhat differently at
> the penalty phase than it does at the guilt
> phase. . . .
>
> Indeed, Mitchell itself leaves open the possibility
> that some inferences might permissibly be drawn from a
> defendant's penalty-phase silence. In that case, the
> District Judge had actually drawn from the defendant's
> silence an adverse inference about the drug quantity
> attributable to the defendant. We held that this ran
> afoul of the defendant's "right to remain silent at
> sentencing." But we framed our holding narrowly, in
> terms implying that it was limited to inferences
> pertaining to the facts of the crime: "We decline to
> adopt an exception for the sentencing phase of a
> criminal case with regard to factual determinations
> respecting the circumstances and details of the
> crime." "The Government retains," we said, "the

> burden of proving facts relevant to the crime . . .
> and cannot enlist the defendant in this process at the
> expense of the self-incrimination privilege." And
> Mitchell included an express reservation of direct
> relevance here: "Whether silence bears upon the
> determination of a lack of remorse, or upon acceptance
> of responsibility for purposes of the downward
> adjustment provided in § 3E1.1 of the United States
> Sentencing Guidelines (1998), is a separate question.
> It is not before us, and we express no view on it."

White, 134 S. Ct. at 1703 (second omission in original)
(internal citations and footnote omitted). Accordingly, because
the jury's guilt phase verdict and penalty phase
verdict/sentence of death "had already established every
relevant fact on which [Virginia] bore the burden of proof"
there are clearly "reasonable arguments that the logic of
Mitchell does not apply" to the judge's subsequent discretionary
determination. Id. at 1704; cf. United States v. Whitten, 610
F.3d 168, 199 (2d Cir. 2010) (holding that "an unsworn,
uncrossed allocution constitutes a limited Fifth Amendment
waiver that allows the prosecution to argue for an adverse
inference from a defendant's failure to testify as to that to
which he has allocuted") (citations omitted).[46] Petitioner's
first subclaim therefore plainly fails to establish the
misapplication of clearly established Supreme Court precedent.

---

[46] Lawlor allocuted prior to the judge making his finding as to whether to
set aside the death sentence imposed by the jury, and Lawlor's very first
comment was an apology expressing remorse for his crime and its impact on
the victim's family. JA 13125-26.

Second, Petitioner objects to the R&R's evaluation of the Supreme Court of Virginia's "weighing" of the state court's error, apparently contending that any reference by a trial judge to an impermissible/unconstitutional factor necessarily renders his entire ruling unconstitutional, and in turn, renders the Supreme Court of Virginia's subsequent analysis of such ruling an "unreasonable" application of Supreme Court precedent.[47] Petitioner's arguments, however, conflate the distinction between the Supreme Court of Virginia's acknowledgement that the trial judge committed an error and a finding that such error warrants habeas relief. Notably, whether or not Mitchell or Estelle clearly establish that a reviewing judge cannot consider a defendant's prior silence for the purpose of evaluating his degree of acceptance and/or remorse, the Supreme Court of Virginia concluded that, based on Virginia and Maryland precedent, Lawlor's sentencing judge committed error by relying on Lawlor's prior silence. Thus, while the Supreme Court of Virginia did not directly analyze Mitchell or Estelle, its conclusion is not in conflict with those cases and is arguably

---

[47] To the extent Petitioner objects to the Magistrate Judge's interpretation of the state habeas court's "weighing" of the facts regarding the degree to which the trial judge relied on Lawlor's silence in deciding not to set aside the jury's sentence of death, this Court agrees with Respondent's arguments in its motion to dismiss. ECF No. 29, at 84-85. Importantly, the context of the trial judge's preliminary comments on "remorse" reveal that they were a direct response to Lawlor's contention that his remorse was "new evidence" that the jury never heard, rather than an effort by the judge to emphasize the weight that he ascribed to Lawlor's lack of remorse.

93

based on a more protective rule than that clearly dictated by such controlling Supreme Court precedent. However, because the error did not occur during the penalty phase of the jury trial, but rather, occurred during the subsequent phase where the judge makes the discretionary determination as to whether the death sentence imposed by the jury should be set aside, the Supreme Court of Virginia held that the controlling test required a determination of whether the identified constitutional error was given "significant weight." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 353, 717 S.E.2d 134, 137 (2011). Petitioner's second objection fails because he does not challenge the constitutional validity of the Landrum abuse of discretion test, let alone point to a United States Supreme Court case clearly establishing that such test is unconstitutional. Stated differently, Lawlor fails to cite Supreme Court precedent standing for the proposition that a trial judge's constitutional violation warrants habeas relief when such judge references, but does not give significant weight to, a criminal defendant's prior silence when evaluating his level of acceptance or remorse during the discretionary process of determining whether to set aside a sentence of death already imposed by the jury. Because Petitioner fails to demonstrate that the state court's application of the Landrum test resulted in an unreasonable application of clearly established Supreme

Court precedent,[48] or that the state court's analysis was based on an unreasonable factual finding, the instant claim is dismissed.

## 17. Claim XVIII

Petitioner's eighteenth claim asserts that the cumulative impact of multiple trial errors requires that Petitioner's convictions and sentence be overturned. The state court addressed a portion of this claim on the merits (alleged cumulative prejudice under Strickland), and a portion of it was deemed defaulted (alleged trial errors unrelated to defense counsel's performance). The R&R recommends dismissal of both portions of this claim for various reasons, including Petitioner's failure to demonstrate that the state court's habeas ruling was unreasonable. Petitioner objects to the R&R's conclusion that there was no Strickland error to "cumulate," and separately argues that a claim grounded in "the cumulative effect of trial errors (as opposed to claims of counsel's ineffectiveness)" is not subject to being deemed "procedurally defaulted." ECF No. 53, at 43. After performing a de novo

---

[48] The test articulated in Landrum, which is predicated on the abuse of discretion standard applied by the Fourth and Eighth Circuits, in essence has a built in prejudice analysis. Landrum, 282 Va. at 352-53, 717 S.E.2d at 137. Similar to the requirement that habeas relief be denied when a lawyer provides constitutionally deficient representation unless the petitioner also proves resulting prejudice, here, the Supreme Court of Virginia recognized that the trial judge relied, in part, on a constitutionally improper factor, but because such reliance was determined to be insignificant to the judge's holding, the reviewing state court found no resulting prejudice, and thus no basis for habeas relief.

review of the objected-to analysis, this Court adopts the R&R's analysis and conclusion on this issue.

First and foremost, the Supreme Court of Virginia did not unreasonably apply Supreme Court precedent in rejecting Lawlor's assertion of cumulative Strickland prejudice. Morris v. United States, No. 4:13cr25, 2017 WL 1538276, at *10 (E.D. Va. Apr. 17, 2017). "Ineffective assistance of counsel claims must be reviewed individually rather than collectively," and "'legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient.'" Id. (quoting Fisher v. Angelone, 163 F.3d 835, 852 n.9 (4th Cir. 1998)). As the state habeas court did not expressly find constitutionally deficient performance as to multiple Strickland claims, its cumulative error analysis was not unreasonable. Moreover, to the extent this Court, or the state habeas court, suggested or assumed in the alternative that counsel performed at a constitutionally deficient level as to multiple discrete issues or sub-issues (e.g., counsel's handling of Dr. Hopper, failure to challenge Virginia's sentencing scheme, and/or failure to more thoroughly investigate Ms. Godlove's prior statements), this Court has performed an independent and de novo analysis as to whether "cumulative" Strickland prejudice was proven by Lawlor, and finds that even

if the entirety of defense counsel's arguable constitutional errors are considered collectively, such errors/potential errors do not undermine confidence in the outcome of either the guilt phase or the penalty phase of Lawlor's trial.

Second, in addition to the adopted analysis regarding the alleged non-Strickland trial errors, this Court finds that even if Petitioner's trial-error claim is not subject to being "defaulted," a contention he appears to raise for the first time in his objections to the R&R, such claim would fail on the merits because Lawlor fails to demonstrate that the cumulative effect of guilt phase and/or penalty phase errors warrant overturning his conviction or sentence. Petitioner's federal habeas filings fail to demonstrate that the state habeas court found multiple instances of trial error but unreasonably failed to cumulate such error when determining whether it was "harmless." Moreover, even if this Court assumes that multiple trial errors occurred (e.g., sentencing judge's reliance on Lawlor's prior silence, exclusion of hearsay testimony about Lawlor's sexual abuse history, exclusion of prison statistics from Dr. Cunningham), and further assumes that it is appropriate to consider such "errors" from a collective standpoint, the collective consideration of the entirety of the trial errors or arguable trial errors fails to undermine confidence in the outcome of either phase of Lawlor's trial. Cf. Wong v.

*Belmontes*, 558 U.S. 15, 26-27 (2009) (reversing the Ninth Circuit, and finding that the petitioner failed to establish *Strickland* prejudice in a case where the "properly admitted aggravating evidence," particularly the circumstances of the crime itself, "was simply overwhelming," and demonstrated "extraordinary brutality," as illustrated by the autopsy photographs of the victim's "mangled head, her skull crushed by 15 to 20 blows from a steel dumbbell bar," along with evidence of defensive wounds on the victim's arms, feet and hands demonstrating her "desperate struggle for life") (quotation marks and citations omitted). Petitioner's eighteenth, and final habeas claim is therefore dismissed.

## D. Motion for Leave to Amend

On December 29, 2016, subsequent to both the issuance of the R&R and the completion of briefing on objections to the R&R, Petitioner filed a motion for leave to amend his § 2254 petition in light of *Hurst v. Florida*, 136 S. Ct. 616 (2016). Respondent filed a brief in opposition and Petitioner filed a reply. For the reasons set forth below, such late-filed motion is dismissed as untimely, and the claim sought to be advanced therein is alternatively denied on the merits.

First, as argued in Respondent's brief in opposition, Petitioner's request to amend his § 2254 Petition to add an unexhausted claim more than a year and half after the Petition

was filed, and after the Magistrate Judge issued his R&R, is both untimely under the § 2254 rules, and is futile. The Court agrees with Respondent that Lawlor fails to demonstrate that Hurst, which was decided nearly a year prior to Petitioner's submission of the motion for leave to amend, establishes a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(D); see Lambrix v. Sec'y, Florida Dep't of Corr., 851 F.3d 1158, 1165 n.2 (11th Cir. 2017) ("[U]nder federal law Hurst, like Ring, is not retroactively applicable on collateral review.") (citation omitted); In re Jones, 847 F.3d 1293, 1295 (10th Cir. 2017) ("The Supreme Court has not held that its decision in Hurst is retroactively applicable to cases on collateral review."). There are similarly no other apparent exceptions warranting the late-filing of this claim, such as the "relation back" doctrine or the prior unavailability of the factual predicate for such claim. Although Petitioner is correct that Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted, Rule 12 of Rules Governing Section 2254 Cases in the United States District Courts states that the Rules of Civil Procedure only apply to § 2254 actions "to the extent that they are not inconsistent with any statutory provisions." Such statutory provisions include 28 U.S.C. § 2244(d)(1), which bars § 2254

claims filed more than one-year after the limitations period begins to run, and the § 2244(d)(1) limitations period takes precedence over Rule 15 of the Rules of Civil Procedure. Moreover, even if Rule 15 were applied in this case, "justice" does not support such late amendment, filed nearly a year after Hurst was decided and months after the R&R was issued. Additionally, for the reasons discussed immediately below, such amendment is also "futile" because the claim sought to be added lacks merit.

Second and alternatively, even if Petitioner's efforts to amend were deemed timely, and were deemed consistent with principles of comity even though this claim has not yet been addressed by the Supreme Court of Virginia, Petitioner's proposed claim would be rejected on the merits for the reasons explained in detail in Commonwealth v. Lawlor, 2017 Va. Cir. LEXIS 36, at *34-*53 (Va. Cir. Ct. Mar. 6, 2017). Such detailed and well-reasoned opinion distinguishes Virginia's capital sentencing scheme from both Delaware and Florida's respective capital sentencing schemes, the latter of which was deemed unconstitutional in Hurst. Cf. Runyon v. United States, -- F. Supp. 3d --, No. 4:08cr16, 2017 WL 253963, at *45-*47 (E.D. Va. Jan. 19, 2017) (finding both "that Hurst does not represent an intervening change in the law," and that it does not overrule prior Fourth Circuit precedent establishing that the "beyond a

reasonable doubt" standard of proof does not extend to "the weighing of aggravating and mitigating factors by a jury"). Accordingly, Petitioner's motion for leave to amend is denied as untimely and futile, and is alternatively denied because the underlying claim sought to be added lacks merit.

## IV. CONCLUSION

Having reviewed for "clear error" all unobjected-to portions of the detailed R&R, this Court **ADOPTS** the unobjected-to facts, analysis, and recommendations set forth in the R&R. Having considered de novo all objected-to portions of the R&R, this Court **ADOPTS** the factual findings, analysis, and recommendations in the R&R, as modified and/or supplemented above. The Court **GRANTS** Respondent's motion to dismiss, hereby **DENYING** and **DISMISSING** Petitioner's § 2254 petition in its entirety. Additionally, the Court **DENIES** both Petitioner's motion to supplement the record and his subsequently filed motion for leave to amend his federal habeas petition.

Finding that Petitioner fails to make the requisite legal showing supporting the issuance of a certificate of appealability, either on procedural or merits-based grounds, this Court **DECLINES TO ISSUE** such a certificate. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003); Slack v. McDaniel, 529 U.S. 473, 484-85 (2000); R. Gov. § 2254 Cases in U.S. Dist. Courts 11(a); 28 U.S.C. § 2253(c). Petitioner is **ADVISED** that,

because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2254 Cases in U.S. Dist. Courts 11(a); Fed. R. App. P. 22(b). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must do so within thirty (30) days from the date of entry of this judgment.

The Clerk is **DIRECTED** to provide a copy of this Opinion and Final Order to Petitioner's counsel and to Respondent's counsel.

It is so **ORDERED**.

_____ /s/ Mark S. Davis

Mark S. Davis
United States District Judge

Norfolk, Virginia
June 15 , 2017